UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 15-cr-00208-FB-VMS-2
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
JUAN NICHOLAS HINDU ROBLES,    :
          Defendant            : September 14, 2017
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


<u>**For the Government**</u>:          **Bridge M. Rohde, Esq.**
                               Acting U.S. Attorney

                         BY:   **Andrew Gilman, Esq.**
                               Assistant U.S. Attorney
                               271 Cadman Plaza East
                               Brooklyn, New York  11201


<u>**For the Defendant**</u>:          **Gary S. Villanueva**, Esq.
                               11 Park Place
                               Suite 1601
                               New York, NY 10007


<u>**Transcription Service**</u>:      **Transcriptions Plus II, Inc.**
                               61 Beatrice Ave.
                               West Islip, New York 11795
                               laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                    Proceedings

1           THE CLERK:  Criminal Cause for Change of Plea

2   Hearing, case number 15-cr-208, United States v. John

3   Doe.

4           Spanish interpreter, Rosa Olivera, previously

5   sworn.

6   (INTERPRETER PREVIOUSLY SWORN)

7           THE CLERK:  Counsel, can you state your name

8   for the record?

9           MR. GILMAN:  Good morning, your Honor.

10          Andrew Gilman for the United States.

11          THE COURT:  Good morning.

12          MR. VILLANUEVA:  And good morning, your Honor.

13          Gary Villanueva for the defendant.

14          THE COURT:  All right.  So let's start with the

15  government.  Are there any victims of the offense and if

16  so, has the government fulfilled its obligation to notify

17  them of the hearing and their right to attend and be

18  heard?

19          MR. GILMAN:  The notification crime is not

20  applicable to this proceeding, your Honor.

21          THE COURT:  Thank you.

22          Kristen, do you want to get the interpreter's

23  appearance?

24          THE CLERK:  Rosa Olivera, previously sworn,

25  Spanish interpreter.

3

                            Proceedings

1           THE COURT:  All right.  So, Mr. Robles, we're

2    going to start with an oath.  So I am going to ask you to

3    stand up and my deputy, Ms. Quinlan, is going to

4    administer it to you.

5    J U A N   N I C H O L A S   H I N D U   R O B L E S ,

6         called as a witness, having been first duly sworn,

7         was examined and testified as follows:

8           THE CLERK:  Thank you.  You can have a seat.

9           THE COURT:  All right.  So, Mr. Robles, you may

10   know, your case is assigned to a district judge, Judge

11   Block.

12           THE DEFENDANT:  Yes.

13           THE COURT:  All right.  My name is Vera

14   Scanlon.  I'm a magistrate judge and Judge Block asked me

15   to help with this proceeding.  Your case is assigned to

16   Judge Block, so Judge Block is the judge who will make

17   the ultimate decision as to whether to accept your plea

18   and if he does accept a guilty plea, to sentence you.

19           So you have the right to have your plea heard

20   by Judge Block without any prejudice to you or you can do

21   it before me.

22           Do you understand?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And the process will be, we'll go

25   through this plea hearing and if you decide to enter a

4

Proceedings

1   guilty plea, we'll have that on the record.  We're making

2   a recording of today's proceeding and a transcript of

3   that recording will be prepared by a court reporter and

4   it will be provided to Judge Block.

5         Judge Block will have the opportunity and will

6   review the transcript of today's proceeding in connection

7   with his decision as to whether to accept your plea and

8   if he does, with your sentence.

9         So, do you understand that process?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Okay.

12        THE DEFENDANT:  All right.

13        THE COURT:  Do you wish to give up your right

14   to have Judge Block listen to your guilty plea and

15   instead proceed here before me today?

16        THE DEFENDANT:  Well, no if the attorney, my

17   judge has selected with you, well there's no problem with

18   this.

19        THE COURT:  Okay.  He has asked me to do it but

20   you don't have to agree.  You can say no, I want to talk

21   to him or we can do this here and then the judge will

22   have the opportunity and will read the transcript of

23   today's proceeding.

24        THE DEFENDANT:  No, let's do it today.  I am

25   grateful to you.

5

                    Proceedings

1           THE COURT:  Okay.  All right.  So in connection

2   with your decision, I have this form.  I'm holding up my

3   copy which says that you agree to proceed before me --

4   I'm summarizing it.

5           Was this form read to you in Spanish?

6           THE DEFENDANT:  Yes, it was read.

7           THE COURT:  And did you go over it with your

8   attorney?

9           THE DEFENDANT:  Yes.

10          THE COURT:  And do you understand it?

11          THE DEFENDANT:  Yes, I did understand it.

12          THE COURT:  And are you in agreement with what

13  it says?

14          THE DEFENDANT:  Yes, I am in agreement with

15  what it says.

16          THE COURT:  All right. On the left side of the

17  page, I am going to point to two signatures.

18          Is this first signature, your signature?

19          THE DEFENDANT:  Yes, the first one on top where

20  it says Hindu.

21          THE COURT:  That's you.

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  And Mr. Villanueva, is

24  that your signature below?

25          MR. VILLANUEVA:  Yes, it is, your Honor.

6

                         Proceedings
1            THE COURT:  All right.  So do you want me to
2    call you Mr. Hindu or Mr. Robles?
3            THE DEFENDANT:  As you prefer.  I'm called
4    Hindu all the time or Robles.  It doesn't matter, either
5    way.
6            THE COURT:  It's your choice.  I can do all.
7    What would you like?
8            THE DEFENDANT:  Well, if you -- if you like,
9    call me Hindu.
10            THE COURT:  All right.  So, Mr. Hindu, are you
11    agreeing to proceed here before me today voluntarily and
12    of your own free will?
13            THE DEFENDANT:  Yes.
14            THE COURT:  And has anyone made any threats or
15    promises to you to get you to agree to proceed here
16    before me today?
17            THE DEFENDANT:  No.  No, I haven't been
18    threatened.
19            THE COURT:  All right.  How about any promises?
20    Did anyone make any promises to you?
21            THE DEFENDANT:  No, I haven't been promised
22    anything, no.
23            THE COURT:  All right.  So based on what's been
24    said here today by counsel and by Mr. Hindu, I believe he
25    understands his rights with regards to proceeding before

7

Proceedings

1   me or proceeding before the district judge and that he's

2   knowingly and voluntarily deciding to proceed before me.

3           So in connection with that, I have signed the

4   consent form.

5           So, Mr. Hindu, in this plea process, I am going

6   to have to have to ask you a number of questions in order

7   to assure myself and in turn, Judge, Block, that your

8   plea is, in fact, a valid plea.  If you don't understand

9   what I say, or you don't understand my questions, please

10  let me know and I'll try to clarify what I have said.

11          Do you understand that you have the right to be

12  represented by an attorney at trial and at every other

13  stage of this criminal proceeding, including today's

14  proceeding?

15          THE DEFENDANT:  Yes, I know that.

16          THE COURT:  All right.  And do you understand

17  that if you can't afford a lawyer, the Court would

18  appoint a lawyer for you?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And is correct --

21          THE DEFENDANT:  I don't have any money to pay,

22  yes.

23          THE COURT:  Okay.  And is it correct, Mr.

24  Villanueva, you have been appointed to represent Mr.

25  Hindu?

8

Proceedings

1          MR. VILLANUEVA:  Yes, I have.  Thank you.

2          THE COURT:  All right.  And Mr. Hindu, you

3   understand that Mr. Villanueva is your appointed attorney

4   for these proceedings, is that correct?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  As we go along today, if at

7   any time you need to speak with Mr. Villanueva, just let

8   me know and I'll give you an opportunity to do that.

9          Do you understand?

10          THE DEFENDANT:  Correct.  Thank you.  Yes.

11          THE COURT:  All right.  So I going to remind

12   you earlier in this proceeding, you just took an oath to

13   tell the truth.  So if you answer any of my questions

14   falsely, your answers may later be used against you in a

15   separate prosecution for the crime of perjury or of

16   making a false statement.

17          Do you understand?

18          THE DEFENDANT:  I understand.

19          THE COURT:  All right.  I'm going to start with

20   some background questions.

21          What is your full name?

22          THE DEFENDANT:  Juan Nicholas Hindu Robles.

23          THE COURT:  And is correct that you're

24   sometimes known as "Hindu," is that correct?

25          THE DEFENDANT:  Well, not really.  The people

9

Proceedings

1   who know me call me Nicholas.

2            THE COURT:  Okay.

3            THE DEFENDANT:  Nicholas.

4            THE COURT:  And are you sometimes called

5   "Nick"?

6            THE DEFENDANT:   Just my wife.

7            THE COURT:  Okay.  All right.  And how old are

8   you?

9            THE DEFENDANT:  66 years old.

10            THE COURT:  And what's the highest level of

11   education that you have completed?

12            THE DEFENDANT:  About seventh -- seventh in

13   number.

14            THE COURT:  Seventh grade?

15            THE DEFENDANT:  Seventh grade.

16            THE COURT:  So about how old were you when you

17   finished school?

18            THE DEFENDANT:  About sixteen, fifteen,

19   sixteen.

20            THE COURT:  And where did you finish school?

21            THE DEFENDANT:  It was in a certain area of

22   Mexico but then my father died and I had to stop going to

23   school.

24            THE COURT:  Okay.  And since you were about

25   sixteen, have you had any other formal education?

Proceedings

1        THE DEFENDANT:  Well, in reality, the only

2   thing I studied was to be literate, to be able to read

3   and that.  I never really went back to school.  All I've

4   done is work.

5        THE COURT:  Okay.

6        THE COURT:  All right.  A different line of

7   questions.  Are you presently or have you recently been

8   under the care of any doctors?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Okay.  So for what conditions have

11   you been treated by a doctor?

12        THE DEFENDANT:  Because the doctor wrongly

13   prescribed a large dose of potassium.

14        THE COURT:  Where was the -- I'm sorry, what

15   was he saying?

16        THE DEFENDANT:  I had 6.5 level of potassium in

17   my body and I lost -- I went from 170 pounds to 106

18   pounds.

19        THE COURT:  All right.  When did this happen?

20        THE DEFENDANT:  Last year.

21        THE COURT:  And just so the record is clear, a

22   6.5 level of potassium is too high, is that correct?

23        THE DEFENDANT:  Very, very, high.  I almost

24   died.

25        THE COURT:  And where did this happen?

11

Proceedings

1        THE DEFENDANT:  Well, I became ill here in the
2   correctional facility here in Brooklyn and I was taken
3   from there to the hospital.  I think the hospital was
4   Brooklyn Hospital.  I think that's the name.

5        THE COURT:  Okay.  And have you been treated
6   for the condition of the too high potassium?

7        THE DEFENDANT:  I've been given treatment and I
8   am also under treatment for high blood pressure.

9        THE COURT:  Okay.  So has your potassium
10   condition been corrected?

11        THE DEFENDANT:  It's not entirely -- entirely
12   at a normal level for my body.  Sometimes -- I have blood
13   work done every month, just to make sure things are -- to
14   see how things are going.  And the potassium affected my
15   entire body.  Supposedly, even my kidneys weren't
16   functioning.  I was operated.

17        THE COURT:  You're pointing at your arm.  You
18   had an operation on your arm.

19        THE DEFENDANT:  And supposedly, I was to
20   undergo dialysis but they didn't need to do that because
21   supposedly my kidneys are functioning normally.

22        THE COURT:  Okay.

23        THE DEFENDANT:  And the thing is that I can't
24   stand the pain here in my --

25        THE COURT:  Your arm?

12

                              Proceedings

1           THE DEFENDANT:  -- in my hand.

2           THE COURT:  Your arm hurts, is that right?

3           THE DEFENDANT:  Sometimes, I even -- it even

4    makes me cry and I asked them to give me other medication

5    but the only they give me is this, Tylenol.

6           THE COURT:  All right.  So maybe at the end of

7    this, we'll put in a medical memo and see if there's an

8    update.  I don't know if it's something you know more

9    about.

10          MR. VILLANUEVA:  Your Honor, this has been a

11   subject of --

12          THE COURT:  Ongoing.

13          MR. VILLANUEVA:  -- communication between the

14   Court, the government and myself and the MDC and their

15   medical department.

16          THE COURT:  All right.  So let me ask, is there

17   anything about the potassium condition that would

18   interfere with your ability to understand what we're

19   doing here today?

20          THE DEFENDANT:  No, no, no, not just now.  I

21   feel pretty good.  I take my blood pressure medication,

22   too.

23          THE COURT:  All right.  So with regard to your

24   kidneys, is there anything about that condition that

25   would interfere with your ability to understand what

13

Proceedings

1    we're doing here today?

2             THE DEFENDANT:  No, no, no.  I'm fine just now.

3    I don't even have any pain or anything.

4             THE COURT:  All right.

5             THE DEFENDANT:  I just took three Tylenol pills

6    for the pain.

7             THE COURT:  All right.  And are you clear-

8    headed, even though you took the three Tylenol?

9             THE DEFENDANT:  Yes.  I am fine, yes.

10            THE COURT:  Okay.  How about with your high

11   blood pressure, do you take medicine for that?

12            THE DEFENDANT:  Yes, yes.

13            THE COURT:  All right.  What medicine --

14            THE DEFENDANT:  Twice a day.

15            THE COURT:  -- do you take?  Twice a day.  What

16   medicine do you take?

17            THE DEFENDANT:  Once in the morning and once at

18   night.  Oh, my God, it's called G -- I don't remember

19   any --

20            THE COURT:  Okay.  All right.  Did you take the

21   medicine this morning?

22            THE DEFENDANT:  Yes, in the morning, yes.

23            THE COURT:  All right.  And is there anything

24   about your high blood pressure condition that would

25   interfere with your ability to understand what we're

14

Proceedings

1   doing here today?

2           THE DEFENDANT:  No, I'm fine just now.  I feel

3   pretty good.

4           THE COURT:  All right.  Do you --

5           THE DEFENDANT:  I feel well.

6           THE COURT:  Well, that's good news.  Do you

7   have any other medical conditions?

8           THE DEFENDANT:  Well, I have this pain here and

9   my spinal column, I fell in the bathroom.  I fell in the

10  bathroom while I was showering and I have this bump here

11  in my back and down here but nothing has been done for

12  me.

13          THE COURT:  Okay.  Are you in a lot of pain

14  right now?

15          THE DEFENDANT:  A little pain.  Not too much.

16  I take -- I take three pills.  I take them four times a

17  day.

18          THE COURT:  All right.  Is there anything about

19  the pain that would distract you or make it hard for you

20  to participate in our proceeding today?

21          THE DEFENDANT:  No, I'm fine.  I feel fine

22  enough to carry on.  Thank you.

23          THE COURT:  All right.  Have you -- are you

24  presently or have you recently been under the care of a

25  mental health professional, such as a psychiatrist,

15

Proceedings

1   psychologist or social worker?

2           THE DEFENDANT:  No, no.  Recently, no, I've

3   never had it.

4           THE COURT:  Have you ever been hospitalized or

5   treated for a mental illness?

6           THE DEFENDANT:  No.

7           THE COURT:  Have you ever been hospitalized or

8   treated for an addiction to drugs or to alcohol?

9           THE DEFENDANT:  I have never done drugs.  I

10  don't drink liquor.  Just cigarettes, I smoked a lot,

11  Marlboros.

12          THE COURT:  Okay.  So is it right you have not

13  had any alcohol in the last 24 hours?

14          THE DEFENDANT:  No, never, no.

15          THE COURT:  All right.  And are the only drugs

16  or medications that you've taken in the last 24 hours,

17  the Tylenol and the high blood pressure medicine?

18          THE DEFENDANT:  Yes, the only thing I take.

19          THE COURT:  All right.  So is your mind clear

20  as you sit here today?

21          THE DEFENDANT:  Of course, yes.

22          THE COURT:  And do you understand what we're

23  doing?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  Let me ask Mr.

16

Proceedings

1   Villanueva, have you discussed this case with your

2   client?

3                  MR. VILLANUEVA:  I have, your Honor.

4                  THE COURT:  And have you done so with the

5   assistance of a translator or do you speak Spanish?

6                  MR. VILLANUEVA:  With the assistance of a

7   translator.

8                  THE COURT:  And have you had any difficulties

9   communicating with your client?

10                 MR. VILLANUEVA:  No.

11                 THE COURT:  And in your opinion, does Mr. Hindu

12  understand today's proceedings?

13                 MR. VILLANUEVA:  Yes, your Honor and I would

14  like to also add because of Mr. Hindu's age and his

15  illnesses, I've spent quite a bit of time in the last

16  three weeks speaking with him and going over and over

17  these -- the -- anticipating these proceedings and

18  talking to him at length and I am confident that today

19  his mind is clear and he's sharp and he's able to

20  understand these proceedings.

21                 THE COURT:  Thank you.

22                 MR. VILLANUEVA:  You're welcome.

23                 THE COURT:  I actually have a couple of more

24  questions for you.

25                 MR. VILLANUEVA:  Oh, sure.  I am sorry.

17

Proceedings

1          THE COURT:  So in your opinion, does he

2   understand the rights that he'll be waiving if he decides

3   to go ahead with a guilty plea?

4          MR. VILLANUEVA:  Yes, your Honor.

5          THE COURT:  And do you have any doubt as to his

6   competence to plead at this time?

7          MR. VILLANUEVA:  None whatsoever.

8          THE COURT:  Did you explain to him how the

9   sentencing guidelines work?

10          MR. VILLANUEVA:  I have.

11          THE COURT:  Did you explain to him the maximum

12   sentence and other possible sentencing consequences that

13   may result from his guilty plea?

14          MR. VILLANUEVA:  Yes, I have.

15          THE COURT:  All right.  Thanks.

16          Mr. Hindu, have you had a sufficient

17   opportunity to discuss your case with your attorney?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And did you do so with the

20   assistance of a Spanish-language interpreter?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Did you have any difficulties

23   communicating with your attorney?

24          THE DEFENDANT:  No, I am not -- never have.

25          THE COURT:  Are you fully satisfied with the

18

Proceedings

1  representation and legal advice given to you in your case

2  by Mr. Villanueva?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.

5          THE DEFENDANT:  Correct.

6          THE COURT:  So there is a document called the

7  indictment.  The actual title of the one in this case is

8  a superseding indictment.

9          Have you seen this document?

10          THE DEFENDANT:  Yes, he told me.

11          THE COURT:  All right.  Was the document

12  translated for you from English to Spanish?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you get a written copy of the

15  translation or was it read to you in Spanish or both?

16          THE DEFENDANT:  Both things, I was given a

17  copy.

18          THE COURT:  All right.  Do you understand the

19  indictment?

20          THE DEFENDANT:  Yes, I know what I am being

21  charged with, what they're saying, yes.

22          THE COURT:  Okay.  All right.

23          Mr. Villanueva, do you want me to read the

24  indictment?

25          MR. VILLANUEVA:  No, your Honor.

Proceedings

1          THE COURT:  All right.

2          MR. VILLANUEVA:  And the Court should note that

3     we provided a translated version of the indictment.

4          THE COURT:  Mr. Villanueva, you're satisfied

5     that your client is able to read the Spanish well enough

6     to understand the indictment?

7          MR. VILLANUEVA:  Yes, your Honor, and we also

8     had it translated in person with the assistance of a

9     Spanish interpreter.

10         THE COURT:  Okay, thank you.

11         MR. VILLANUEVA:  You're welcome.

12         THE COURT:  All right.  Mr. Hindu, at this

13    point, I am going to explain some of your rights in an

14    American criminal proceeding.

15         So the first thing to know is that you don't

16    have to plead guilty, even if you are guilty.  Under the

17    American legal system, it's the prosecution or the

18    government's burden of proving a defendant's guilt beyond

19    a reasonable doubt. And if the government fails to do

20    this, the jury at trial has the duty to find the

21    defendant not guilty even if the defendant is guilty.

22         So what this means is even if you are guilty,

23    you have a choice.  It's your choice to decide whether

24    you want to continue with your plea of not guilty or you

25    want to change your plea to guilty, as I am told you wish

Proceedings

1   to do.

2          You can choose to go to trial in this case by

3   continuing with your plea of not guilty.  If you do that,

4   you will make the government meet its burden of proving

5   your guilt beyond a reasonable doubt.  And if the

6   government fails, as I said a minute ago, the jury would

7   have the duty to find you not guilty.

8          So you should know that it has happened in

9   American courtrooms, including in this courthouse, that a

10  jury has returned a verdict of not guilty even though

11  everyone else in the courtroom believed the defendant had

12  committed the crime with which he was charged.

13         What the jury was saying in that case, was not

14  that the defendant had not committed the crime, but

15  rather that the government had failed to meet its burden

16  of proving the defendant's guilt beyond a reasonable

17  doubt.

18         Do you understand that?

19         THE DEFENDANT:  Yes, I understand.

20         THE COURT:  All right.  So, for you, it's up to

21  you to decide whether you want to continue with your plea

22  of not guilty or change it to guilty.

23         If you continue with your plea of not guilty,

24  under the Constitution and the laws of the United States,

25  you are entitled to a speedy and public trial by jury

21

Proceedings

1    with the assistance of a lawyer on the charges against

2    you that are set forth in the superseding indictment

3    which has been filed with the Court.

4              Do you understand?

5              THE DEFENDANT:  Yes, I understand.

6              THE COURT:  At a trial, you would be presumed

7    innocent.  You would have no obligation to prove that

8    you're innocent.  It would be the government's burden to

9    overcome that presumption of innocence and prove you

10   guilty by competent evidence and beyond a reasonable

11   doubt.  And if the government failed, the jury would have

12   the obligation to find you not guilty.

13             If you decide to plead guilty, you're giving up

14   your right to have the government satisfy its burden of

15   proving you guilty beyond a reasonable doubt and instead,

16   you'll be admitting your guilt.

17             Were you to persist with your plea of not

18   guilty and go to trial, at the trial witnesses for the

19   government would have to come to court.  They would

20   testify in your presence.  Your lawyer could cross-

21   examine the witnesses, your lawyer could object to the

22   evidence offered by the government and your lawyer could

23   offer witnesses and other evidence on your behalf.

24             Your lawyer could also compel or subpoena

25   witnesses to come to court and to testify.

Proceedings

1          Do you understand?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  All right.  If you decide to go

4    ahead with a guilty plea, and I recommend that Judge

5    Block accept your plea and that's what he does, you're

6    giving up these rights.  You're giving up your right to a

7    trial, to confront witnesses who would testify against

8    you, to offer evidence on your own behalf, to compel

9    witnesses to come to court and to testify and to raise

10   any other defenses that you may have.

11          Do you understand?

12          THE DEFENDANT:  Yes, I understand.

13          THE COURT:  At trial, you would have the right

14   to testify on your own behalf if you choose to do so but

15   it would be up to you and you could not be required to

16   testify.

17          Under the Constitution of the United States, a

18   defendant in a criminal case cannot be forced to take the

19   witness stand at a trial and say anything that could be

20   used against him to show that he is guilty of the crime

21   or crimes with which he is charged.

22          So, if you decided at your trial that you

23   didn't want to testify, the judge would tell the jury

24   that they could not hold that fact  or that decision

25   against you.  This is called exercising your right

23

Proceedings

1   against self-incrimination.

2           Do you understand?

3           THE DEFENDANT:  Yes, I understand.

4           THE COURT:  If you decide to go ahead with your

5   guilty plea, you're going to waive that right.  You're

6   going to tell me what it is that you did in order to

7   satisfy myself and Judge Block that you, in fact, are

8   guilty of the charge to which you are pleading guilty.

9           I'm going to have to ask you questions about

10  what you did and you are going to have to answer my

11  questions truthfully.

12          THE DEFENDANT:  Of course, yes.

13          THE COURT:  And when you answer those

14  questions, it's subject to the oath that you took earlier

15  to tell the truth.  So it's not going to be enough for

16  you simply to say that you're guilty.  You're going to

17  have to tell me what it is that you did such that you are

18  guilty.

19          Do you understand?

20          THE DEFENDANT:  The truth, yes.

21          THE COURT:  All right. So if you plead guilty

22  and I recommend that Judge Block accept your plea and

23  that's what he does, you're giving up your constitutional

24  right to a trial and to all the other rights that I have

25  just discussed.  There will not be a trial in your case.

24

                              Proceedings
1    If Judge Block accepts your plea, he will simply enter a

2    judgment of guilty on the basis of your plea.

3              Do you understand that?

4              THE DEFENDANT:  All right.  It's all right,

5    yes.  I understand.

6              THE COURT:  If after you are sentenced, you or

7    your attorney thinks the Court has not properly followed

8    the law in sentencing you, you can usually appeal your

9    sentence to a higher court.  But by pleading guilty, you

10   will not except under very limited circumstances, be able

11   to challenge the judgment of conviction either directly

12   or indirectly.

13             We're going to go over -- sorry, we're going to

14   go over the plea agreement that you have with the

15   government in a few minutes but I want to draw your

16   attention to a limitation in the agreement on your right

17   to appeal.

18             In paragraph 4 of the agreement, it says, "The

19   defendant agrees not to file an appeal or otherwise

20   challenge by petition pursuant to 28 USC Section 2255 or

21   any other provision, the conviction or sentence in the

22   event that the Court imposes a term of imprisonment of

23   188 months or below."

24             So do you understand that limitation on your

25   right to appeal?

Proceedings

1           Why don't you take a minute and speak with

2    your attorney.

3           MR. VILLANUEVA:  One second.

4           THE COURT:  Yep.

5    (Counsel and client confer)

6           MR. VILLANUEVA:  Thank you, Judge.

7           THE COURT:  All right.  So I think the last

8    question I asked was do you understand the limitation in

9    the plea agreement on your right to appeal?

10          THE DEFENDANT:  Yes, I understand that.

11          THE COURT:  All right.

12          THE DEFENDANT:  Thank you.

13          THE COURT:  All right.  So are you willing to

14   give up your right to a trial and all the other rights

15   that I have just discussed?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.

18          THE DEFENDANT:  I am going to plead guilty to

19   what I did.

20          THE COURT:  Okay.  So I am going to explain

21   some more things, ask you some more questions, and then

22   at the end, we'll talk about what your plea is.

23          All right.  So there's a document called the

24   plea agreement.  I have marked it as Government's Exhibit

25   1.  We're going to look at the last page of the original,

26

Proceedings

1 which I have up here.  In the middle of the last page,

2 which is page 6, it says, "I have read the entire

3 agreement and discussed it with my attorney.  I

4 understand all of its terms and I am entering into it

5 knowingly and voluntarily."

6          So was this agreement translated for you from

7 English to Spanish?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And that sentence or last two

10 sentences that I just read, are those -- I'm going to

11 point to them here in the document, are those statements

12 correct?

13          THE DEFENDANT:   Yes, it's correct.

14          THE COURT:  I'm going to point, if you look up

15 here, to my copy.

16          Is this your signature in the middle of the

17 page?

18          THE DEFENDANT:  Yes, it's my signature.

19          THE COURT:  All right.  And then Mr.

20 Villanueva, below that is that your signature?

21          MR. VILLANUEVA:  Yes, it is, your Honor.

22          THE COURT:  All right.  And then let me ask Mr.

23 Villanueva, how was this document translated?  Was it in

24 writing or was it read orally?

25          MR. VILLANUEVA:  Both, your Honor.  We provided

27

Proceedings

1   Mr. Hindu a translated version of the plea agreement and

2   in addition, on numerous occasions, we have, with the

3   assistance of a Spanish interpreter, we went line by line

4   through the plea agreement.

5           THE COURT:  Do you know who the translator was

6   of the written document?

7           MR. VILLANUEVA:  Yes.  I used two translators,

8   Jay Carlos Hernan (ph.) and Jan Calloway (ph.).  So on

9   probably four or five occasions with each of those

10  interpreters, we went through this agreement.

11          THE COURT:  All right.  And do you know who

12  translated the written document?

13          MR. VILLANUEVA:  I believe Mr. Hernan did but I

14  can't be sure because Ms. Calloway also translated

15  documents but I am pretty sure it was Mr. Hernan.

16          THE COURT:  All right.  Mr. Gilman, up at top,

17  is that your signature?

18          MR. GILMAN:  Yes, your Honor.

19          THE COURT:  And then I have no idea whose

20  signature that is below.

21          MR. GILMAN:  I believe it's our supervisor,

22  United States Attorney Gina M. Parlovecchio.

23          THE COURT:  Okay.  And what was her role in

24  connection with this case?

25          MR. GILMAN:  She is the supervisor to myself

28

Proceedings

1    and Mr. Robotti.  We're the assigned assistants.

2               THE COURT:  Okay.  All right.  Thanks.

3               THE COURT:  Mr. Villanueva, were all formal

4    plea offers by the government conveyed to the defendant?

5               MR. VILLANUEVA:  Yes, your Honor.

6               THE COURT:  So, Mr. Robles, was the entire plea

7    agreement, which is the document that I have marked as

8    Government's Exhibit 1, read to you in Spanish?

9               THE DEFENDANT:  This one?  Yes, yes.

10              THE COURT:  This, yep.

11              THE DEFENDANT:  Yes.

12              THE COURT:  Did you have any difficulty

13   understanding the document?

14              THE DEFENDANT:  Well, no, I was told what I

15   could get, zero to 20 years.

16              THE COURT:  All right.  We're going to go over

17   that in some more detail in a minute.

18              Did you go over the plea agreement with Mr.

19   Villanueva?

20              THE DEFENDANT:  Yes.

21              THE COURT:  And do you understand all of the

22   terms of the plea agreement?

23              THE DEFENDANT:  What he told me, yes,

24   everything.

25              THE COURT:  Let me just understand -- do you

29
Proceedings

1   understand everything that's in the plea agreement?

2           THE DEFENDANT:  Since he explained it all to

3   me, yes, I understand it.

4           THE COURT:  All right.  Does the plea

5   agreement, which is Government Exhibit 1, accurately

6   represent the entire understanding or agreement that you

7   have entered into with the United States government?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Has anyone made any promise or

10  assurance to you that's not included in this document to

11  persuade you to accept the plea agreement?

12          THE DEFENDANT:  No, no one has forced me.

13          THE COURT:  All right.  Has anyone threatened

14  you in any way to persuade you to accept the plea

15  agreement?

16          THE DEFENDANT:  No.

17          THE COURT:  All right.  Mr. Villanueva, I think

18  I asked you this before but just to make sure the record

19  is clear, did you read and review Government Exhibit 1

20  with your client?

21          MR. VILLANUEVA:  I did, your Honor.

22          THE COURT:  And have you -- you did so with the

23  assistance of an interpreter, is that correct?

24          MR. VILLANUEVA:  I did.

25          THE COURT:  And does Government Exhibit 1

30

Proceedings

1    reflect your  understanding of the entire agreement that

2    your client has entered into with the government?

3              MR. VILLANUEVA:  It does.

4              THE COURT:  Mr. Hindu, do you understand that

5    if you fail to comply fully with your agreement with the

6    government, the government will be released from its

7    obligations but you will not be released from your guilty

8    plea?

9              THE DEFENDANT:  All right.  There's no problem.

10   I accept it.

11             THE COURT:  All right.

12             THE DEFENDANT:  I am going to plead guilty to

13   what I did.

14             THE COURT:  All right.  I am going to ask you

15   what you did in a little while.  I need to explain a few

16   more things to you before we get to that stage.

17             So we're going to go over the plea agreement

18   and some of the information included in here.  So looking

19   at paragraph 1 of Government Exhibit 1, it says that you

20   are going to waive any challenge to venue in this

21   district, which is the Eastern District of New York.

22             Is that correct?

23             THE DEFENDANT:  Yes, plead guilty to a lesser

24   included offense including in -- included in Count 2 of

25   the indictment.

31

Proceedings

1          THE COURT:  Okay.  So that's the next thing.

2   What it says is that you're going to, as you said, plead

3   guilty to a lesser included offense of Count 2 of the

4   superseding indictment which charges you with a violation

5   of a particular federal statute, 21 USC Section 963.

6          Sp as you alluded to earlier, this count

7   carries the following statutory penalties.  The maximum

8   term of imprisonment is 20 years.  The minimum term of

9   imprisonment of zero years.

10          So as you said earlier, there's a range from

11  zero to 20 years of what your possible term of

12  imprisonment may be and that's totally up to Judge Block

13  what he is going to do in your case.

14          There's a minimum supervised release term of

15  three years and a maximum supervised release term of

16  life, which would follow any term of imprisonment.

17          Were you to violate a condition of release, you

18  could be sentenced for up to two years and you wouldn't

19  receive any credit for pre-release imprisonment or time

20  previously served on post-release supervision.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I undesrtand.

23          THE COURT:  All right.  If you're placed on

24  supervised release, there may be restrictions on your

25  liberty which may include travel limitations,

32

Proceedings

1  requirements that you report regularly to a probation

2  officer, prohibitions on carrying certain weapons and

3  other limitations.

4         Do you understand that?

5         THE DEFENDANT:  All right.

6         THE COURT:  The maximum fine that can be

7  imposed of $1 million.

8         There's no agreement with regard to restitution

9  but you have to be charged $100 special assessment.

10         Let me ask, Mr. Villanueva, is your client a

11  citizen of the United States?

12         MR. VILLANUEVA:  No, your Honor.

13         THE COURT:  Am I missing it?  Let me ask the

14  government, you usually --

15         THE DEFENDANT:  I have papers but they don't --

16  they don't expire.

17         THE COURT:  Usually in these kinds of plea

18  agreements --

19         THE DEFENDANT:  Those papers don't expire.

20         THE COURT:  -- there's some discussion about

21  removal.

22  (Counsel and client confer)

23         THE COURT:  Just wait until Mr. Villanueva is

24  ready.

25         MR. VILLANUEVA:  I'm sorry.  Yes, I am.  I'm

33

Proceedings

1  sorry.

2          THE COURT:  That's fine.

3          MR. VILLANUEVA:  I was distracted.  I am sorry.

4          THE COURT:  No, no.  Did you have enough time

5  to talk to your client?

6          MR. VILLANUEVA:  Yes, I did.

7          THE COURT:  Okay.  I was asking the government,

8  this is obviously the plea agreement and the terms are

9  completely between you and the defendant but usually, I

10  see language related to removal.  So I just want to make

11  sure it wasn't an oversight, that it's intentionally not

12  included in this document.

13          MR. GILMAN:  I believe it is an oversight, your

14  Honor, that were (indiscernible).

15  (Counsel and client confer)

16          MR. GILMAN:  May I see the copy the Court has?

17  I apologize.

18          THE COURT:  Sure.

19  (Counsel and client confer)

20          MR. GILMAN:  Okay.  Your Honor, we discussed

21  the source of confusion.  I apologize.  I handed the

22  incorrect copy to the Court --

23          THE COURT:  Okay.

24          MR. GILMAN:  -- of the plea agreement.  I just

25  confirmed with Mr. Villanueva, that the agreement I am

34

Proceedings

1  holding now is the correct agreement and so what we're

2  going to do is now execute this agreement --

3           THE COURT:  Okay.

4           MR. GILMAN:  -- and ask that the Court -- the

5  Government Exhibit 1 be replaced with --

6           THE COURT:  I think we'll mark the new one as

7  Government's Exhibit 2 and the record will show that the

8  2 is the one that we're dealing with.

9           MR. GILMAN:  That sounds fine, your Honor.

10  Thank you.

11           THE COURT:  Sure -- just to make sure.

12           MR. GILMAN:  I apologize for the confusion.

13           THE COURT:  It's okay.

14  (Pause)

15           MR. GILMAN:  Thank you very much.

16  (Counsel and client confer)

17           THE COURT:  Mr. Hindu, there was some confusion

18  as to the right copy of the document. So I have a new

19  copy of the plea agreement from the government which I

20  have marked as Government's Exhibit 2.  I'm going to ask

21  the government to hold onto Government's Exhibit 1, just

22  so there's no confusion in the record.

23           MR. GILMAN:  Yes, your Honor.

24           THE COURT:  Okay.  Let me ask Mr. Villanueva,

25  was this complete document, Government's Exhibit 2,

35

Proceedings

1  translated from English to Spanish?

2          MR. VILLANUEVA:  Yes, it was, your Honor, and I

3  have confirmed that by checking both my Spanish-

4  translated copy of the plea agreement, as well as my

5  English version against a copy that your Honor designated

6  as a court exhibit.

7          THE COURT:  All right.  So, Mr. -- thank you.

8          Mr. Hindu, I am going to have to go back and

9  ask you a couple of the questions that I had asked before

10 but this time it's in reference to this version of the

11 document which I am calling Government's Exhibit 2.

12          All right.  So the document that's called

13 Government's Exhibit 2 on page 7 of that document, it

14 says, "I have read the entire agreement and discussed it

15 with my attorney.  I understand all of its terms and I

16 entering into it Knowingly and voluntarily."

17          Are those statements correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  And below -- I am going

20 to hold up my copy which is Government's Exhibit 2, here

21 right below those statements, is that your signature?

22          THE DEFENDANT:  Yes, Miss.

23          THE COURT:  And then Mr. Villanueva, below that

24 is your signature?

25          MR. VILLANUEVA:  Yes, it is.

36

Proceedings

1          THE COURT:  All right.  And just for the

2   record, do you remember -- can you repeat the names of

3   the two individuals who you think translated the

4   document?

5          MR. VILLANUEVA:  Yes, Ms. Jan Calloway and Mr.

6   Jay Carlos Hernan.

7          THE COURT:  All right.  Thank you.

8          MR. VILLANUEVA:  Yes, your Honor.

9          THE COURT:  And Mr. Gilman, the signature up at

10  the top, is that your signature?

11         MR. GILMAN:  Yes, your Honor.

12         THE COURT:  All right.  And then below that,

13  your supervisor, can you tell me her name?

14         MR. GILMAN:  That's correct, it's Miss Gina M.

15  Parlovecchio, Assistant United States Attorney.

16         THE COURT:  All right.  Thank you.

17         And Mr. Hindu, did you receive a translated

18  copy of the plea agreement?  So a copy of that was

19  written in Spanish?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And did you read it?

22         THE DEFENDANT:  Yes, I read it.

23         THE COURT:  Did you understand it?

24         THE DEFENDANT:  Yes, I understand.

25         THE COURT:  All right.  Did you go over it with

37

Proceedings

1    your lawyer?

2           THE DEFENDANT:  Yes, we spoke about it, the two

3    of us.  Yes, we did.

4           THE COURT:  All right.  And do you understand

5    all of the terms that are in the plea agreement that's

6    marked as Government's Exhibit 2?

7           THE DEFENDANT:  Yes, I understand exactly.

8           THE COURT:  All right.  And does this document,

9    Government's Exhibit 2, accurately represent the entire

10   understanding or agreement that you have with the

11   government?

12          THE DEFENDANT:  Number 2, yes.

13          THE COURT:  Number 2, yeah.

14          THE DEFENDANT:  Zero to 20, that's what it

15   says.

16          THE COURT:  Yes, we're going to go over that in

17   some more details in a minute.  All right.

18          Did anyone make any promise or assurance to you

19   that not's included in Government's Exhibit 2 in order to

20   persuade you to accept the agreement with the government?

21          THE DEFENDANT:  No.

22          THE COURT:  All right.  Has anyone --

23          THE DEFENDANT:  I've never --

24          THE COURT:  I'm sorry.

25          THE DEFENDANT:  -- been told anything.

38

Proceedings

1       THE COURT:  Okay.  Meaning you have never been
2  promised anything, is that correct?
3       THE DEFENDANT:  No, I haven't been promised
4  anything.
5       THE COURT:  All right.  Has anyone threatened
6  you in any way to persuade you to accept the plea
7  agreement which is Government's Exhibit 2?
8       THE DEFENDANT:  No, not that either.
9       THE COURT:  All right.  Have you read and
10  reviewed -- sorry, this is a question for Mr. Villanueva.
11  Have you read and reviewed with your client the written
12  plea agreement, Government's Exhibit 2?
13       MR. VILLANUEVA:  Yes, your Honor.
14       THE COURT:  And does it reflect your entire
15  understanding of the agreement that your client has
16  entered into with the government?
17       MR. VILLANUEVA:  Yes, it does.
18       THE COURT:  All right.  Thanks.
19       All right, Mr. Hindu, I am going to repeat a
20  couple of other things that I said earlier but I want to
21  make sure you understand them in connection with
22  Government's Exhibit 2.
23       If you fail to comply with your agreement with
24  the government, the government will be released from its
25  obligations but you will not be released from your guilty

39

Proceedings

1   plea.

2           Do you understand that?

3           THE DEFENDANT:  All right.

4           THE COURT:  And then also --

5           THE DEFENDANT:  I understand.

6           THE COURT:  Thank you.  And also earlier, I

7   said if after you are sentenced, you or your attorney

8   thinks that the judge has not properly followed the law

9   in sentencing you, you can usually appeal your sentence

10  to a higher court but by pleading guilty, you will not,

11  except under very limited circumstances, be able to

12  challenge your judgment of conviction either directly or

13  indirectly.

14          And then I had noted that there is an

15  additional limitation on your right to appeal included in

16  the plea agreement.  I'm just trying -- okay.  And

17  that's in paragraph 4 which is on page 4.  I am just

18  going to read the first sentence of that paragraph.

19  "The defendant agrees not to file an appeal or otherwise

20  challenge by petition pursuant to 28 USC Section 2255 or

21  any other provision, the conviction or sentence in the

22  event that the Court imposes a term of imprisonment of

23  188 months or below."

24          Do you understand that limitation?

25          THE DEFENDANT:  Yes.

40

Proceedings

1          THE COURT:  Okay.  So I think we're back to

2     where we left off in terms of talking about the plea

3     agreement.

4              So as we had talked about earlier, the plea

5     agreement provides that you're going to waive any

6     challenge to venue in the Eastern District of New York.

7              Is that correct?

8          THE DEFENDANT:  What was that?  I didn't

9     understand the question.

10         THE COURT:  All right.  So I am looking at the

11    plea agreement --

12         THE DEFENDANT:  Sorry.

13         THE COURT:  I'm looking at the plea agreement,

14    Government's Exhibit 2, paragraph 1 on the first page.

15    On the first part of the first sentence provides that you

16    are going to waive or you are waiving any challenge to

17    venue in the Eastern District of New York.

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  It's also proposed that

20    you're going to plead guilty to a lesser included offense

21    of Count 2 of the superseding indictment which charges

22    you with a violation of 21 USC Section 963.

23              So as you had said earlier, the maximum term of

24    imprisonment is 20 years and the minimum term of

25    imprisonment is zero years.  The minimum supervised

41

Proceedings

1   release term is three years.  The maximum supervised

2   release term is life.  It would follow any term of

3   imprisonment.  Were you to violate a condition of

4   release, you could be sentenced for up to two years

5   without credit for pre-release imprisonment or time

6   previously served on post-release supervision.

7            If you're placed on supervised release, there

8   may be many restrictions on your liberty including travel

9   limitations and requirements that you report regularly to

10  a probation officer.

11           Do you understand?

12           THE DEFENDANT:  Yes, I understand.

13           THE COURT:  The maximum fine that can be

14  imposed is $1 million.  There's no agreement for

15  restitution and there's a $100 special assessment that

16  must be imposed.

17           Other penalties include removal from the United

18  States which is described in paragraph 6 of the agreement

19  which I am going to go over now.

20           So I understand from our earlier discussion

21  that you are not a United States citizen.  If you are not

22  a United States citizen, pleading guilty may have serious

23  consequences with regard to your immigration status.

24  Under federal law, several offenses including the one to

25  which it's proposed you're going to plead guilty, are

42

Proceedings

1   what we call removable offenses.

2           In fact, what is proposed you're going to plead

3   guilty to, which is conspiracy to distribute marijuana,

4   the presumption is that you're going to be removed. So

5   we say removal is presumptively mandatory but immigration

6   matters such as removal are the subject of a separate

7   case or a separate proceeding.

8           So nobody here, not your lawyer, not me, not

9   the government's lawyer or the other judge on the case,

10  can tell you with certainty what the effect of your

11  conviction may be on your immigration status.

12          Nonetheless, what this agreement says is that

13  you affirm that you want to plead guilty regardless of

14  any immigration consequences that your plea may have,

15  even if the consequence is your automatic removal from

16  the United States.

17          Do you understand these immigration issues?

18          THE DEFENDANT: Yes, I do understand.

19          THE COURT: Did you go over them with your

20  lawyer?

21          THE DEFENDANT: Yes, I did speak about it with

22  the lawyer.

23          THE COURT: And is it correct that you affirm

24  that you want to plead guilty regardless of any

25  immigration consequences that your plea may have, even if

43

Proceedings

1   your consequence -- even if the consequence is your

2   automatic removal from the United States?

3            THE DEFENDANT:  Well, yes, what else can I do?

4   I have to tell the truth about what I did.

5            THE COURT:  Okay.  You have options which your

6   lawyer -- well, I will ask him but I believe your lawyer

7   has gone over with you, including you have the option of

8   going to trial.  You know, everything I was explaining

9   earlier, you have the right to continue --

10           THE DEFENDANT:  Yes.

11           THE COURT:  -- with your not guilty plea, you

12  can go to trial, see what the jury decides.  Or you can

13  change your plea from not guilty to guilty.  That was

14  what I was hoping to explain to you earlier, right, when

15  I went over all the rights that you have.  You know, you

16  can have a trial.  You can do certain things at a trial.

17  You would have a lawyer at the trial.  I am not going to

18  go over them all again, unless you want me to but I want

19  to be clear --

20           THE DEFENDANT:  No, no, it's all right.

21           THE COURT:  -- that you understand that you

22  have a choice.  It's up to you to decide if you want to

23  stick with your plea of not guilty or change it to

24  guilty.

25           THE DEFENDANT:  No, I am going to plead guilty.

44

Proceedings

1          THE COURT:  All right.  And you want to do

2     that?  Is it correct, even if the consequence is your

3     removal from the United States.  Is that correct?

4          THE DEFENDANT:  Well, yes, what else can I do

5     now?  I can -- I made this mistake.

6          THE COURT:  Okay.  Let me -- my role here is to

7     make sure that you understand.  I understand rhetorically

8     that --

9          THE DEFENDANT:  Yes, I understand this.

10         THE COURT:  -- one can say what can I do but I

11    want to make sure you understand that you actually have a

12    choice.  You may believe --

13         THE DEFENDANT:  All right.  No, I understand.

14         THE COURT:  -- one choice is the right choice.

15    Hang on, let me finish and then you can speak.  You may

16    decide one choice is the right one for you.  I have no

17    opinion about that.  That's completely your decision.

18    You are making it in consultation with your lawyer.

19         But you have a choice.  You do not have to

20    plead guilty.  If you want to plead guilty, you can do

21    that.  You don't have to.  You have a choice.  It's for

22    me, it's  not just a rhetorical question, it's an actual

23    question.  Do you want to do this, for example, stick

24    with  your not guilty plea or do you want to do the other

25    thing, change your plea to guilty?

45

Proceedings

1          All right, so --

2          THE DEFENDANT:  No, I will plead guilty.

3          THE COURT:  All right, And do you want to do

4   that even though you are very, very, very, likely to be

5   deported from the United States?

6          THE DEFENDANT:  It's all right.  Well, you

7   know, that's what you get sometimes for doing things here

8   and there.

9          THE COURT:  All right.  Well, that's a

10  conversation you're going to have with the other judge

11  who is the one who decides what the consequences are and

12  then in the immigration proceeding, you'll have that

13  discussion.

14         All right.  Then let's go over other parts of

15  this plea agreement.  Let me ask you actually one other

16  question.

17         Do you understand that there is no parole in

18  the federal system?  So, that if the judge gives you a

19  term of imprisonment, you're going to spend that time in

20  prison.

21         THE DEFENDANT:  Yes, I know that's the case.

22  Yes.

23         THE COURT:  All right.  So let me explain a

24  little bit about how this sentencing process works.

25  Judge Block, who is going to be the sentencing judge in

46

Proceedings

1    your case, does not have complete discretion to impose a

2    sentence outside of the minimum and maximum sentences

3    that are set forth in the statute, which as we talked

4    about are zero to 20 years.

5            Do you understand that?  Do you understand?

6            THE DEFENDANT:  Yes.

7            THE COURT:  As a first step in the sentencing

8    process, Judge Block will consider what are called

9    advisory sentencing guidelines that have been issued by

10   the United States Sentencing Commission.  Their purpose

11   to help him decide what's a reasonable sentence in a

12   criminal case.

13           In the second step, he will consider whether

14   there are any factors present that would allow him to go

15   above or below the advisory sentencing guidelines.

16           Now the third step, he considers a list of

17   factors that are set forth in a particular federal

18   statute which is 18 USC Section 3553(a).

19           For each of those steps, it takes into account

20   the particular facts of your case and your situation.  It

21   might be that the judge decides to impose a guideline

22   sentence.  It might be that the judge decides to impose

23   what is called a non-guideline sentence.

24           But until you get to the district judge and

25   have the conversation with him, so the judge talks to

47

Proceedings

1   you, talks to your lawyer, talks to the government's

2   lawyer, and reads the materials that are submitted,

3   nobody can know what your sentence will be.  So nobody

4   here can tell you what your sentence will be until you

5   get to that -- well, let me say that again.  No one here

6   could tell you what your sentence is going to be, only

7   the district judge can tell you that and he could only

8   tell you that after he's going through this multi-step

9   process.

10          Nonetheless, the lawyers can make an estimate

11  as to what the sentencing guidelines are likely to be in

12  your case.  These are going to be -- their estimate is

13  going to be based solely on the information available to

14  them.  So they may be missing information.  There might

15  be information that develops between now and the time of

16  sentencing.  So that basically, they're giving you their

17  best guess.

18          All right.  Let me just take a moment.  I know

19  you had a conflicting appointment and Ms. Quinlan has let

20  them know, right?

21          MR. VILLANUEVA:  Yes.  Thank you, appreciate

22  it.

23          THE COURT:  Okay, thanks.

24          All right.  So for the government, what's your

25  estimate as to the guidelines calculation for Mr. Hindu?

48

                         Proceedings

1          MR. GILMAN:  Yes, your Honor.  The government

2    has included the estimate guidelines calculation in the

3    agreement.  The government believes that the adjusted

4    offense level that would be applied to the defendant is

5    33, which carries with it, an advisory guidelines range

6    of imprisonment of 135 to 168 months.  So assuming the

7    defendant falls within criminal history category one.

8          THE COURT:  Okay.  So I am going to interrupt

9    you or add to that.  So the copy that I have --

10         MR. GILMAN:  Yes.

11         THE COURT:  -- has the old date on it.

12         MR. GILMAN:  Okay.

13         THE COURT:  May -- is that right?  Is that what

14   you have?

15         MR. GILMAN:  The plea by date is the prior

16   proceeding, your Honor.

17         THE COURT:  Yes, that's right, there was

18   another hearing, right?

19         MR. GILMAN:  That's right.  If we could just --

20         THE COURT:  Yep, here.  We'll give you our

21   copy.  If you can change it to presumably today's date.

22   Mr. Villanueva will give you a chance to look at that and

23   explain that to your client.

24         MR. VILLANUEVA:  Yes.

25         THE COURT:  If he's in agreement, everybody can

49

Proceedings

1   initial it.

2   (Counsel and client confer)

3           THE COURT:  All right.  Are you ready?

4           MR. VILLANUEVA:  Yes.  Yes, we are.

5           MR. GILMAN:  Yes.

6           THE COURT:  Okay.  So a couple of points.

7   Let's first talk about the document.  Government's

8   Exhibit 2 has had a date correction in it.  And in

9   paragraph 2, where it said May 11th, that's been changed

10  to September 14th, which is today's date and it's been

11  initialed.

12          So first let me ask Mr. Gilman, are those your

13  initials I'm pointing to?

14          MR. GILMAN:  Yes, your Honor.

15          THE COURT:  All right.  And then Mr. Hindu, are

16  you initials over here?

17          THE DEFENDANT:  Yes, Miss.  Yes, Ma'am.

18          THE COURT:  And then, Mr. Villanueva, are your

19  initials there?

20          MR. VILLANUEVA:  Yes, your Honor.

21          THE COURT:  Mr. Villanueva, did you have a

22  sufficient opportunity to review with your client the

23  date change?

24          MR. VILLANUEVA:  Yes, I have.

25          THE COURT:  And do you believe he understands

50

Proceedings

1   it?

2           MR. VILLANUEVA:  Yes, he does.

3           THE COURT:  All right.  And then Mr. Hindu, do

4   you agree that the date change that's been made for May

5   11th to September 14th in paragraph 2 of the plea

6   agreement?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  And are -- did you have

9   a sufficient opportunity to review that date change with

10  your attorney?

11          THE DEFENDANT:  Just now, we were looking at

12  it.

13          THE COURT:  All right.

14          THE DEFENDANT:  Yes.

15          THE COURT:  Did you have enough time or do you

16  need more time to talk with him about it?

17          THE DEFENDANT:  No, it's all right.  Everything

18  is fine.  Thank you.

19          THE COURT:  Okay.  So more broadly, paragraph 2

20  outlines the government's position with regard to the

21  sentencing guidelines.

22          Do you understand everything in paragraph 2?

23          THE DEFENDANT:  Yes, I do understand.  Yes.

24          THE COURT:  All right.  And I am going to point

25  to you that the last sentence of paragraph 2 says that

51

Proceedings

1    "The defendant agrees that his guideline range should be

2    calculated based on a drug type and quantity of 5,530

3    kilograms of marijuana and waives any right to a Fatico

4    hearing or a jury trial on such issue."

5              Is that a correct statement?

6              THE DEFENDANT:   The 5,000 some-odd kilos of

7    marijuana is a lie.

8              THE COURT:  Okay.  Hold on one moment.

9    (Court and clerk confer)

10             THE COURT:  All right.  We're going to give you

11   a chance to talk for a second.

12   (Counsel and client confer)

13             THE COURT:  All right.  Hold on a second.

14   (Counsel and client confer)

15             MR. VILLANUEVA:  We're ready to go forward.

16   Thank you, your Honor.

17             THE COURT:  All right.  So just to recap, the

18   statement that's made in paragraph 2 on page 3 of the

19   plea agreement which is Government's Exhibit 2 is, "The

20   defendant agrees that his guideline range should be

21   calculated based on a drug type and quantity of 5,530

22   kilograms of marijuana and waives any right to a Fatico

23   hearing or a jury trial on such issue."

24             So the first question for Mr. Hindu, do you

25   understand that statement?

52

Proceedings

1        THE DEFENDANT:  Yes, I understand it perfectly

2  well but the thing is that the only thing I did in regard

3  to this is that somebody in Mexico put me in contact and

4  I conspired with this person.

5        THE COURT:  Uh-hum.

6        THE DEFENDANT:  I had a hotel in Puerto

7  Penasco, Sonora.  This kid -- this guy, he just sent --

8  one time he sent these blonde guys, these Americans with

9  cars and he said he could give me some money but that I

10  should let him know every time the cars left Mexico for

11  Phoenix.  And that was my job how I cooperated with this

12  person.  But I was never paid any money because

13  supposedly the cars never arrived.

14        MR. VILLANUEVA:  Your Honor, if I may?  The

15  issue was whether or not Mr. Robles is aware of 5,000

16  kilos of marijuana.  Mr. Robles' knowledge is the

17  knowledge contained within the cars that he was

18  contracted or that he agreed to conspire with and I think

19  the government is going to indicate that the entire

20  conspiracy was 5,530 kilos, which is the issue.

21        MR. GILMAN:  That's correct, your Honor.  As we

22  expect the defendant to such a -- plead to when he gets

23  to his specific allocution, that he was involved in this

24  conspiracy and that he knew it was drugs.  And the total

25  amount of drugs that the government attributes to the

53

Proceedings

1    defendant is this 5,000 and change number, which is what
2    is cited in the plea, which the defendant is agreeing is
3    the appropriate amount of drugs that were seized as a
4    result of the conspiracy.

5            THE COURT:  Okay.  But still, there's a lot
6    information that goes into the calculation of the
7    guideline range for your case and I've only gone over an
8    outline of what those issues are.

9            You've heard the government's position and I
10   haven't yet asked your lawyer.  It was really going with
11   the government's position right now, then we'll ask Mr.
12   Villanueva what he thinks but as part of your agreement
13   with the government, you are agreeing that when the judge
14   calculates this guidelines range, the facts that he
15   should consider include that the drug was marijuana and
16   that the quantity of drugs involved in the conspiracy was
17   5,530 kilograms of marijuana.

18           And you're waiving certain rights that you have
19   with regard to the question of what drugs were involved,
20   and how much of that drug was involved.  So you're
21   agreeing that when the judge thinks about what your
22   sentence should be, both in context of the guidelines and
23   the other things that I told you he had to consider, that
24   he is going to factor in that the drugs are marijuana and
25   that this was the quantity of marijuana.

54

Proceedings

1           Again, it's up to you to decide, do you want to

2    agree.

3           THE DEFENDANT:  I agree with respect to the

4    cars -- with respect to the cars that I cooperated in

5    sending to the people.  But how can I take on all of that

6    stuff?

7           MR. VILLANUEVA:  Your Honor?

8           THE DEFENDANT:  That's what I don't understand.

9           MR. VILLANUEVA:  And it's a legitimate --

10          THE COURT:  I am not taking any view.  This

11   question is --

12          MR. VILLANUEVA:  And it's --

13          THE COURT:  -- whether -- for me, right now, is

14   whether your client fully understands the plea agreement.

15   Obviously, Judge Block can take into account all these

16   factors, work with the guidelines, upward or down, all of

17   these things, you know?  There's a lot more thinking and

18   thought that's going to go into a sentence if your client

19   decides he wants to plead guilty.

20          But he's doing it pursuant to this agreement

21   and so far, I think we're at -- at best, an ambivalent

22   point as to whether he understands what this is about.

23          MR. VILLANUEVA:  It is, your Honor, and as long

24   as -- and I believe my client understands this.  The

25   entire conspiracy is the 5,000.

Proceedings

1          THE COURT:  Right.

2          MR. VILLANUEVA:  And it's a long conspiracy.

3          THE COURT:  Very long.

4          MR. VILLANUEVA:  Right.  So Mr. Hindu's

5   participation is very discrete and there's only a

6   snapshot of that.  Mr. Hindu's conceptual issue is he has

7   trouble understanding that the entire conspiracy is 5,000

8   but my role or my participation of these cars, which he

9   is prepared to allocute to --

10          THE COURT:  I think his confusion is pretty

11   clear but right now, the agreement is as it says, on the

12   drug type and the weight or quantity.  And so I don't

13   believe he is making this agreement, whether if he

14   understood it more clearly, he would make this agreement

15   but it's entirely possible.

16          So do you want to talk him --

17          MR. VILLANUEVA:  Yes, I do.

18          THE COURT:  -- a little bit more now and --

19          MR. VILLANUEVA:  I would like to.

20          THE COURT:  Do you want to -- how long do you

21   think you need to talk with him about it?

22          MR. VILLANUEVA:  This is something we've talked

23   about before, so I am not sure I need much time.

24          THE COURT:  Okay.

25          MR. VILLANUEVA:  But whatever is -- if you have

56

                              Proceedings

1    another matter, I can go in the back.

2              THE COURT:  Yeah, that's what I was wondering.

3              MR. VILLANUEVA:  I can go in the back.

4              THE COURT:  For the marshals, we're going to

5    just take a break.  We'll do a second call.  We'll pick

6    it up.  We'll do the other conference and come back.

7              All right.  So, Mr. Hindu, we're going to take

8    a break, give you a chance to talk to your lawyer.  I'm

9    going to talk to some other lawyers on a different case

10   and then we're going to bring you back out and see what

11   you want to do.

12             MR. VILLANUEVA:  Can I leave my stuff here?

13             THE COURT:  Yes, yes, sure.

14             MR. VILLANUEVA:  Okay.  Thank you.

15             (Recess from 12:37 p.m, until 2:13 p.m.)

16             THE CLERK:  Second call for case number 15-cr-

17   208, United States v. John Doe.

18             Spanish interpreter, can you please state your

19   name for the record?

20             THE INTERPRETER:  Maristela Verastegui,

21   previously sworn.

22   (INTERPRETER PREVIOUSLY SWORN)

23             THE CLERK:  Thank you.  Counsel, can you state

24   your name for the record.

25             MR. GILMAN:  Good afternoon, your Honor.

                    Transcriptions Plus II, Inc.

57

Proceedings

1          Andrew Gilman for the United States.

2          THE COURT:  Good afternoon again.

3          MR. VILLANUEVA:  And Gary Villanueva for Mr.

4   Hindu.

5          Good afternoon, Judge.

6          THE COURT:  Good afternoon.

7          All right, so Mr. Hindu, we had a break.  Let

8   me just check in.  How are you feeling?

9          THE DEFENDANT:  A bit -- the pain is getting a

10  bit worse, but --

11         THE COURT:  Is that the pain in  your arm?

12         THE DEFENDANT:  The arm and my back.

13         THE COURT:  Your back and your hip.  Is there

14  anything -- is it so bad that it would interfere with

15  your ability to proceed here today?

16         THE DEFENDANT:  No, no, I don't think so, no.

17         THE COURT:  All right.  So we took a break for

18  you to have an opportunity to speak with your attorney

19  about the sentence in paragraph 2 of your plea agreement

20  which is marked as Government's Exhibit 2.

21         And the sentence that was giving cause for

22  concern is as follows:  "The defendant agrees that his

23  guideline range should be calculated based on a drug type

24  and quantity of 5,530 kilograms of marijuana and waives

25  any right to a Fatico hearing or a jury trial on such

58

Proceedings

1   issue."

2           And so I had asked you a couple of questions

3   about whether you had read that or had it read to you, if

4   you understood it, if you had talked to your lawyer about

5   it and if you were in agreement.  So let me ask those

6   questions.

7           Did you read that sentence?

8           THE DEFENDANT:  Yeah, I -- I agree with the

9   statement, I just was seeking to clarify that I wasn't

10  personally involved all of that amount of drugs and that

11  my participation is what I had mentioned but I know it's

12  a conspiracy and that that's -- it was several people,

13  not just me.

14          THE COURT:  Okay.  So did you have enough time

15  to talk to your lawyer about that sentence?

16          THE DEFENDANT:  Yes, that's what we were

17  discussing previously.

18          THE COURT:  All right.  So are you in agreement

19  with that sentence?

20          THE DEFENDANT:  Yes, yes, I am.

21          THE COURT:  Okay.  So let me just ask your

22  lawyer what's your -- is your estimate what the

23  government estimated with regard to the guidelines or do

24  you think they should be something other than what Mr.

25  Gilman said.

Proceedings

59

1        MR. VILLANUEVA:  I think the guideline estimate

2   is accurate.  However, there are significant other

3   sentencing factors that we believe will outweigh the

4   advisory guidelines --

5        THE COURT:  Okay.

6        MR. VILLANUEVA:  -- including my client's

7   health, his age, his 40 years of working in a legitimate,

8   tax-paying position.  I think those are factors that I

9   think will also be relevant to sentencing.

10        THE COURT:  All right.  So, Mr. Hindu, just so

11   you understand, we're going through this plea process to

12   create the record, if you decide to go ahead with your

13   change of plea from not guilty to guilty.  But the

14   district judge, Judge Block, is the one who is going to

15   make the decision about your sentence and there's going

16   to be a significant opportunity for you and your lawyer

17   and the government to state and provide in writing if you

18   like, your respective positions with regard to the

19   sentence to the district judge.

20        So what Mr. Villanueva said is really just a

21   very brief overview of what he'll develop when you get to

22   the sentencing date.

23        All right.  Do you understand that the estimate

24   given by the government is not binding on the government,

25   the probation department or the Court?  That was just the

60

Proceedings

1    government's current best estimate.

2            THE DEFENDANT:  Yes, that's right.

3            THE COURT:  And --

4            THE DEFENDANT:  You're referring to the points,

5    right?

6            THE COURT:  Yes.  And your ultimate sentence

7    could turn out to be different from any estimate that the

8    government lawyer said, or that your lawyer has given you

9    or that you may have developed yourself.

10           Do you understand that?

11           THE DEFENDANT:  Yes, right.

12           THE COURT:  All right.  So it could turn out

13   that because of statutory sentencing factors, the

14   district judge could impose a sentence that's higher or

15   lower than the sentencing guidelines.

16           But do you understand, most importantly, that

17   your sentence could be higher than the one recommended by

18   the advisory sentencing guidelines?

19           THE DEFENDANT:  Yes, yes, understood.

20           THE COURT:  All right.  And if turned out that

21   your sentence was higher than that provided by the

22   guidelines, you would not be permitted to withdraw your

23   guilty plea simply because no one could tell you in

24   advance what your sentence would be.

25           Do you understand that?

61

Proceedings

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  All right.  And what's being

3   proposed here is that you're going to plead guilty to a

4   felony.  And to the extent that you may enjoy certain

5   civil rights in the United States, which you may or may

6   not have because you're not a citizen, a felony

7   conviction could limit some of those rights.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Let's just look a

11   little bit more at the document that's been marked as

12   Government's Exhibit 2.  So we talked about paragraph 1.

13   We've gone over paragraph 2 when we were talking about

14   the possible sentencing guidelines.

15          Have you read paragraphs 3, 4, and 5?

16          THE DEFENDANT:  Yes, the ones -- yes.

17          THE COURT:  Do you understand them?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  And did you have a sufficient

20   opportunity to review them with your attorney?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  And are you in

23   agreement with those paragraphs?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  Paragraph 6 is the

62

Proceedings

1    paragraph about your likely removal from the United

2    States.

3              Did you read this paragraph?

4              THE DEFENDANT:  Yes, I did, your Honor.

5              THE COURT:  Did you go over it with your

6    lawyer?

7              THE DEFENDANT:  Yes, we were discussing that

8    that was a possibility that I would have to face because

9    of what I did.

10              THE COURT:  Okay.  All right.  And you

11    understand everything in that paragraph, is that right?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Okay.  All right.  And then the

14    last two paragraphs in this agreement are paragraph 7 and

15    paragraph 8.

16              Did you read those paragraphs?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Do you understand them?

19              THE DEFENDANT:  Yes, I did.

20              THE COURT:  Did you have a sufficient

21    opportunity to review them with your attorney?

22              THE DEFENDANT:  Yes, my lawyer did.

23              THE COURT:  All right.  And do you -- are you

24    in agreement with what those paragraphs say?

25              THE DEFENDANT:  Yes.

63

                              Proceedings

1          THE COURT:  Okay.  All right.  Just to recap,

2   document that's been marked as Government's Exhibit 2 is

3   the plea agreement.

4          Do you understand everything in this plea

5   agreement?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  I'm making sure I've covered

8   everything.

9          All right.  So we talked a little bit earlier

10  about me asking you what it is that you did such that you

11  are, in fact, guilty.  And so I am going to first ask the

12  government some questions.  Then I am going to come back

13  and ask you some questions and see if you want to enter

14  your plea of guilty.

15         All right.  So for the government, is the

16  government prepared to prove at trial all of the elements

17  of the count against the defendant?

18         MR. GILMAN:  Yes, your Honor.

19         THE COURT:  And are those elements that are

20  relevant to this plea set forth in the government's

21  letter of May 24th or your element sheet rather, not

22  letter?

23         MR. GILMAN:  That's correct, your Honor.

24         THE COURT:  All right.  And then Mr.

25  Villanueva, do you have a copy of the element sheet?

64

Proceedings

1          MR. VILLANUEVA:  I do, your Honor.

2          THE COURT:  Do you agree that it accurately

3    states the elements of the -- actually, hold on one

4    second.  Let me ask you something different.

5          Okay.  I may have -- this element sheet is for

6    the offense of the international and marijuana

7    distribution conspiracy.  The plea is going to be the

8    lesser included offense, right?

9          MR. GILMAN:  To -- I believe that what changes,

10   your Honor, the elements are the same.

11         THE COURT:  Uh-hum.

12         MR. GILMAN:  But the lesser included offense is

13   that the offense to which he is pleading does not include

14   a mandatory minimum sentence as was charged in the

15   indictment.

16         THE COURT:  All right.  So what's the lesser

17   included -- what's different between --

18         MR. GILMAN:  There's the weight --

19         THE COURT:  Okay.

20         MR. GILMAN:  -- of drug is not specified and

21   thus, there's no mandatory minimum --

22         THE COURT:  Right.

23         MR. GILMAN:  -- in this plea agreement.

24         THE COURT:  Okay, so let me ask the question.

25   So, Mr. Villanueva, do you have a copy of the elements

65

Proceedings

1   sheet?

2          MR. VILLANUEVA:  I do, your Honor.

3          THE COURT:  All right.  And do you agree that

4   the elements as they're listed here they're -- I guess

5   these are the elements actually for the lesser included

6   offense, not -- it's just the text is a little confusing.

7          So it refers to Count 2.  Count 2 is the

8   offense, right, the international marijuana distribution

9   conspiracy and then what's being proposed he plead to is

10  the lesser included offense which is the elements as

11  they're listed on the elements sheet.

12         Do I have that correct?

13         MR. VILLANUEVA:  That's correct.

14         THE COURT:  All right.  So, Mr. Villanueva,

15  have you gone over the elements for the lesser included

16  offense as they're listed on the elements sheet with your

17  client?

18         MR. VILLANUEVA:  I have, your Honor.

19         THE COURT:  All right.  And do you believe he

20  understands them?

21         MR. VILLANUEVA:  I believe so, yes.

22         THE COURT:  Okay.  All right.  So for the

23  government, is the government prepared to prove at trial

24  all the elements of the counts against the defendant and

25  if your answer is yes, then what would the evidence be

66

Proceedings

1  that the government would offer at trial to show the

2  defendant's guilt?

3          MR. GILMAN:  The evidence is yes, your Honor,

4  the government is prepared to provide evidence that would

5  allow it to meet its burden at trial.  The evidence

6  consists of reports concerning the seized drugs,

7  testimony from law enforcement officers, recordings,

8  potential wire interceptions --

9          THE COURT:  Potential?

10          MR. GILMAN:  Wire interceptions, your Honor.

11  And perhaps additional evidence, as well.

12          THE COURT:  Okay.  All right.  Mr. Villanueva,

13  do you agree the government would be able to prove the

14  case against your client based on the evidence just

15  described by counsel?

16          MR. VILLANUEVA:  I do, your Honor.

17          THE COURT:  Okay.  So, Mr. Villanueva, do you

18  know of any reason why Mr. Hindu should not plead guilty?

19          MR. VILLANUEVA:  I do not, your Honor.

20          THE COURT:  Are you aware of any viable legal

21  defense to the charges against him?

22          MR. VILLANUEVA:  No, your Honor.

23          THE COURT:  All right.  And in your

24  professional opinion, is this plea agreement and his

25  guilty plea at this time, in his best interest?

67

Proceedings

1          MR. VILLANUEVA:  Yes, it is.

2          THE COURT:  Okay.  All right.

3          So, Mr. Hindu, do you need an opportunity to

4    speak with your attorney before I ask you about how you

5    plead?

6          THE DEFENDANT:  No. Everything is fine, I am

7    ready.

8          THE COURT:  All right.  So with regard to the

9    lesser included offense of Count 2 to the superseding

10   indictment, how do you plead, guilty or not guilty?

11         THE DEFENDANT:  I -- you know, I am -- I am

12   guilty.

13         THE COURT:  All right.  And as we've touched on

14   a couple of times here, I'm going to ask you what it is

15   that you did such that you are, in fact, guilty of the

16   lesser included offense of Count 2, the international

17   marijuana distribution conspiracy.

18         THE DEFENDANT:  Okay.  Yeah, I -- firstly, I

19   would like to apologize to everybody because, yes, I did

20   commit this very, very big mistake.  There was this --

21   this person that I had conversations with, I owned a

22   hotel in Mexico.  He was sending Americans there in cars.

23   There, people would load the cars.  They would take it

24   out of my establishment, loaded with marijuana.

25         So my task, what to call -- was to call this

68

Proceedings

1   person at the time that the cars were departing.  And

2   from where I lived to the border, there is one hour by

3   car.  And I called him but during one of those

4   conversations one day, he said he was going to pay me

5   extra money for doing it.  That I would get paid $500 to

6   $1,000 for the cars to get all the way up to Phoenix.

7           And I remember doing this with about three

8   different cars.  I -- I never actually received the money

9   because according to him, the cars never actually made it

10  to the destination.  They were apparently intercepted or

11  something.

12          So after all of those things happened with

13  those people, I stopped my participation and I did this

14  starting in April up to like the month of August or

15  September of 2015.  It was four or five months

16  participation with these people.

17          THE COURT:  Okay.  And did you participate

18  knowingly and intentionally?

19          THE DEFENDANT:  Yes, I -- and I knew this was

20  against the law.  Yes.

21          THE COURT:  And just so I am clear, the cars

22  were going from -- with the marijuana were going from

23  Mexico to the United States?

24          THE DEFENDANT:  Yes, from Mexico in Puerto

25  Penasco, Sonora, all the way to Phoenix.

69

Proceedings

1          THE COURT:  Okay.  And something we had touched
2     on earlier, which is it correct, you agreed to waive the
3     venue, so that this case can go forward in this district
4     in Brooklyn, even though these events that you just
5     talked about happened in Mexico and the border states, is
6     that correct?
7          THE DEFENDANT:  Yeah, I am already here and I
8     would like to continue here.
9          THE COURT:  Okay.  All right.  So Mr.
10     Villanueva, is there anything else you would like your
11     client to add to that allocution?
12          MR. VILLANUEVA:  No, your Honor.
13          THE COURT:  All right.  And for the government,
14     is that a satisfactory allocution?
15          MR. GILMAN:  Did we -- and I apologize if I
16     missed it, your Honor, did he submit that he knew that
17     the cars contained drugs?  Did he say that at some point?
18          THE COURT:  I thought he said that the person
19     -- I understood what happened, he said he had the
20     conversation with the person who then sent Americans to
21     his hotel and they had the cars.  They loaded the cars
22     from his hotel with marijuana.  His task was to call and
23     say that those cars were leaving and -- from Mexico.  He
24     lives -- the hotel is about an hour from the border.  And
25     then go on.

70

Proceedings

1          MR. GILMAN:  That's --

2          THE COURT:  I mean, we can clarify but I think

3    -- so Mr. Hindu, did you know that the cars about which

4    you were calling had marijuana in them?

5          THE DEFENDANT:  Yes, the three cars that I had

6    to do with, I was aware that there was marijuana in them.

7    I just never got paid for it because apparently they were

8    intercepted.

9          MR. GILMAN:  Thank you, your Honor.

10         THE COURT:  All right.  So just for the record,

11   that's a satisfactory allocution for the government?

12         MR. GILMAN:  Yes.  And at trial, your Honor, we

13   also would prove the interstate nexus component involved

14   in trafficking drugs.

15         THE COURT:  Did we talk about crossing the

16   border?

17         MR. GILMAN:  And sorry, crossing the border, of

18   course, in foreign --

19         THE COURT:  Yes.  And he said -- okay, just

20   again, the cars are going from an hour south of the

21   border in Mexico, aiming for Phoenix in the United

22   States.

23             Is that correct?

24         MR. GILMAN:  That's correct.

25         THE COURT:  All right.  Mr. Hindu, that's

71

Proceedings

1  correct?

2          THE DEFENDANT:  Yes, yes, yes, I think

3  supposedly at some part along the way, they were -- they

4  were intercepted.

5  (Counsel and client confer)

6          THE COURT:  Okay.  So for the government, do

7  you have any other concerns about the allocution?

8          MR. GILMAN:  Nothing further from the

9  government, your Honor.  Thank you.

10          THE COURT:  Okay.  All right.  Let me ask you a

11  few other questions, Mr. Hindu.

12          Are you pleading guilty voluntarily and of your

13  own free will?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Has anyone threatened or forced you

16  to plead guilty?

17          THE DEFENDANT:  No, nobody, no.

18          THE COURT:  Other than the promises that are

19  contained in the written agreement that you entered into

20  with the government, which is the document marked as

21  Government Exhibit 2, has anyone made any other promises

22  to you to get you to plead guilty?

23          THE DEFENDANT:  No, nobody.  No, thank you.

24          THE COURT:  And is it --

25          THE DEFENDANT:  Nobody else offered anything

72

Proceedings

1  else.

2        THE COURT:  Has anyone made any promises to you

3  as to what your final sentence will be?

4        THE DEFENDANT:  No, I haven't been told

5  anything like that.

6        THE COURT:  All right.  Do you still want to go

7  ahead with this guilty plea even though your removal from

8  the United States is very, very likely, as a consequence

9  of your entering this plea?

10        THE DEFENDANT:  I wish it wouldn't have to

11  happen but if it will happen, I will accept it.

12        THE COURT:  And are you pleading guilty of your

13  own free will because you are, in fact, guilty?

14        THE DEFENDANT:  Yes.

15        THE COURT:  All right.  Based on the

16  information given to me here today, I believe Mr. Hindu

17  is fully competent, that he is capable of entering an

18  informed plea, that he is acting voluntarily, that he

19  understands the charge against him, that he understands

20  his rights and the consequences of the plea and that

21  there's a factual basis for the plea as to each of the

22  essential elements of the offense, which is the lesser

23  included offense of Count 2, international marijuana

24  distribution conspiracy in the superseding indictment.

25        So, I therefore respectfully recommend that

Proceedings

1    Judge Block accept the plea of guilty to that count.

2            Do we have a sentencing date from Mike?

3            MR. GILMAN:  No.

4            THE COURT:  No.  Okay.

5            MR. GILMAN:  We have a next status conference

6    coming up in October before Judge Block.

7            THE COURT:  All right.  The medical issues that

8    came up, do you need any assistance from the Court or are

9    you going to bring it up with Judge Block or are they

10   getting resolved? What's going on?

11           MR. VILLANUEVA:  This is an issue that's been

12   ongoing since Mr. Hindu's arrest and the district court

13   has been aware of it, there has been communication back

14   and forth between the Court, the legal department, as

15   well as the medical department at MDC.

16           THE COURT:  Okay.  All right.

17           Are there any motions?

18           MR. GILMAN:  The government moves to exclude

19   time until -- I think time is excluded until the next --

20   I think we're okay, your Honor.

21           THE COURT:  All right.  What about the record?

22           MR. GILMAN:  I apologize.  Time -- just for the

23   purposes of the record, the speedy trial clock is tolled

24   at the moment by order of Judge Block until our next

25   status conference --

74

Proceedings

1          THE COURT:  Okay.

2          MR. GILMAN:  -- which is scheduled for October

3    6th, your Honor.

4          THE COURT:  Okay.  I am wondering, this started

5    out as a question about whether this was a John Doe.  Are

6    there any motions on that front?

7          MR. GILMAN:  Not from the government, your

8    Honor.  I guess --

9          THE COURT:  You're looking at me.  Sometimes

10   when it's a John Doe case, there's a request for the

11   transcript to be sealed.

12         MR. GILMAN:  Oh, I see.

13         THE COURT:  I was wondering if that is

14   something that is happening in this case or not.  I don't

15   have enough of a context to know where the John Doe issue

16   came from.  I'll let you talk about.

17   (Counsel and client confer)

18         MR. GILMAN:  The defense and the government

19   agrees that there still is sufficient basis for sealing,

20   your Honor.

21         THE COURT:  Why don't you state -- are there

22   safety concerns or something --

23         MR. GILMAN:  There are safety concerns that are

24   implicated.

25         THE COURT:  Okay.  So that the record is

75

Proceedings

1   sealed.  All right.

2           Anything else?  Nope?

3           MR. VILLANUEVA:  No, thank you very much for --

4           THE COURT:  All right.

5           MR. GILMAN:  Nothing from the government.

6           MR. VILLANUEVA:  -- the Court's patience

7   (indiscernible).

8           THE COURT:  Okay.  Thank you, your Honor.  Take

9   care.

10          MR. GILMAN:  Thank you, your Honor.

11          THE COURT:  I'm going to give you back

12  Government's Exhibit 2 and you're holding on to

13  Government's Exhibit 1, right?

14          MR. GILMAN:  Yep.  Thank you, your Honor, for

15  sticking with us (indiscernible).

16          MR. VILLANUEVA:  Thank you, your Honor.

17          THE COURT:  All right.

18                  (Matter concluded)

19                      -o0o-

20

21

22

23

24

25

76

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **October**, 2017.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.