SK/FJN/ADW/EMR
F. #2015R00471 / OCDETF #NY-NYE-777

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                              15-CR-208 (S-3) (FB)

        - against -

ISMAEL QUINTERO ARELLANES,
    also known as "Fierro,"

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S DETENTION MEMORANDUM


                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


Saritha Komatireddy
Francisco J. Navarro
Erin M. Reid
Andrew D. Wang
Assistant United States Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in support of its application for a permanent order of detention for the defendant Ismael Quintero Arellanes, also known as "Fierro," a senior member of the Caro Quintero DTO, a violent drug trafficking organization based in Mexico and led by Rafael Caro Quintero.  The defendant was arrested by Mexican authorities on January 29, 2020.  He was extradited from Mexico to the United States on March 1, 2023 and is scheduled to appear before the Court tomorrow for an arraignment on the Third Superseding Indictment (the "S-3 Indictment") in this case.  For the reasons set forth below, at his arraignment, the Court should enter a permanent order of detention, as no condition or combination of conditions can assure the safety of the community or the defendant's appearance at trial.

STATEMENT OF FACTS

I.      The Caro Quintero DTO[1]

From at least January 1980 until June 2018, Rafael Caro Quintero led a sprawling and powerful international drug trafficking organization based in Mexico (the "Caro Quintero DTO").  The Caro Quintero DTO operated a vast narcotics transportation network responsible for the manufacture and importation from Mexico into the United States of multi-ton quantities of heroin, cocaine, methamphetamine, and marijuana.  The vast majority of drugs trafficked by the Caro Quintero DTO were imported into the United States, where the drugs were consumed.  The Caro Quintero DTO also employed firearms to further its drug trafficking activities, including to plan and carry out numerous murders in Mexico.

In 1985, Rafael Caro Quintero was arrested and convicted in Mexico on charges relating to the murders of four people.  Despite his imprisonment, Caro Quintero continued to direct the activities of the Caro Quintero DTO by giving orders to family members and associates.  In 2013, a Mexico state court ordered Caro Quintero's release from prison, though a Mexican federal court issued a new arrest warrant just days after Caro Quintero's release.  After his release, Caro Quintero immediately went into hiding and continued to personally lead the Caro Quintero DTO.  On July 15, 2022, Caro Quintero was recaptured by Mexican authorities.

---

[1]   As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a permanent order of detention.  See United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995).  As this proffer seeks only to articulate facts sufficient to justify detention, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

II.       Quintero Arellanes' Membership in the Caro Quintero DTO

Quintero Arellanes was a high-ranking lieutenant within the Caro Quintero DTO and served as Rafael Caro Quintero's personal head of security.  Indeed, after Caro Quintero's release from prison in 2013, the defendant and other members of the Caro Quintero DTO went to great lengths to protect Caro Quintero from being recaptured.  For example, the defendant frequently acted as an intermediary for Caro Quintero by relaying messages and orders to other members of the Caro Quintero DTO via an electronic messaging program.  This arrangement reflected concern within the Caro Quintero DTO that Caro Quintero's direct use of telephones or messaging applications would expose him to law enforcement detection.

The defendant's electronic messages also show that the defendant was responsible for detecting possible efforts by Mexican authorities to capture Caro Quintero and warning other members of the Caro Quintero DTO accordingly.  For instance, on February 21, 2015, agents lawfully intercepted communications during which the defendant directed another member of the DTO to warn Caro Quintero that the military was preparing to conduct a raid to capture Caro Quintero.  In another instance, on or about June 14, 2015, another member of the DTO wrote to the defendant, stating that they had to move Caro Quintero and indicated that it was important to keep secret any information about Caro Quintero.

Furthermore, the defendant was directly involved in trafficking large quantities of controlled substances on behalf of the Caro Quintero DTO.  For example, on February 25, 2015, agents lawfully intercepted communications during which an associate of the Caro Quintero DTO asked the defendant how much it would cost to move 500 kilograms of narcotics and whether he could obtain Caro Quintero's permission to move the drugs through Puerto Penasco, a city located in the Mexican state of Sonora.  The defendant later responded by giving permission to transport

4

the drugs through Puerto Penasco and indicating that he would obtain Caro Quintero's permission to invest in the drug load.  In another example, on February 6, 2016, the defendant exchanged messages with another member of the Caro Quintero DTO, giving instructions on quantities and timing of drug deliveries.  The defendant indicated that he was receiving instructions directly from Caro Quintero, writing "that's what the old man said."

Finally, evidence gathered through this investigation also showed that the defendant and others possessed firearms to further their drug trafficking activities.  For instance, on February 25, 2016, agents lawfully intercepted communications between the defendant and another member of the Caro Quintero DTO.  During that communication, the defendant wrote that he was purchasing two firearms that were like the "cop killers" and that one could fit 30 bullets in each magazine.  One or more witnesses have also personally observed the defendant carrying firearms, including an assault rifle in one instance while traveling in an armed convoy that was safeguarding Caro Quintero as he traveled through the mountains of Sinaloa.

The evidence in this case includes, among other things, lawfully intercepted communications, witness testimony, seizures of drugs, and photographs.

III.    Foreign Authorities' Arrest and Extradition of Quintero Arellanes

On July 26, 2018, a grand jury sitting in the Eastern District of New York returned the S-3 Indictment.  Counts Two and Three charge the defendant with conspiring to distribute cocaine, heroin, methamphetamine, and marijuana, knowing and having reasonable cause to believe that those drugs would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963.  Count Four charges the defendant with the use of firearms in furtherance of his drug trafficking crimes, in violation of Title 18, United States Code, Sections

5

924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii).  Each of Counts Two, Three, and Four

carries a statutory maximum of life imprisonment and a mandatory minimum of 10 years'

imprisonment.

On January 29, 2020, Mexican law enforcement authorities arrested the defendant

in Mexico.  Following extradition proceedings based on the S-3 Indictment, the defendant was

extradited from Mexico and arrived in the Eastern District of New York on March 1, 2023.

ARGUMENT

I.      Legal Standards

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a federal court must order a

defendant detained pending trial where it determines that "no condition or combination of

conditions would reasonably assure the appearance of the person as required and the safety of any

other person and the community[.]"  18 U.S.C. § 3142(e).  A presumption of dangerousness and

risk of flight arises when a defendant is charged with an offense under the Controlled Substances

Act or the Controlled Substances Import and Export Act that carries a maximum term of

imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant

committed such offense.  18 U.S.C. § 3142(e)(3)(A).  Probable cause may be established by the

sheer fact that a grand jury has returned an indictment charging the defendant with the offense in

question.  See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

The presumption means that the Court must initially assume there is "no condition

or combination of conditions that will reasonably assure the appearance of the person as required

and the safety of the community."  18 U.S.C. § 3124(e)(3).  The defendant may rebut this

presumption by coming "forward with evidence that he does not pose a danger to the community

or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If

this burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight.  See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).   Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking."   United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985).   In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  See

7

18 U.S.C. § 3142(g).  Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption also remains a factor for the Court to consider.  Mercedes, 254 F.3d at 436.

II.    A Presumption of Detention Applies

This case involves offenses for which there is a presumption that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community.  See 18 U.S.C. § 3142(e)(3).  Specifically, because the defendant is charged with multiple counts under the Controlled Substances Import and Export Act for which the maximum term of imprisonment is life, he is presumed to pose a danger to the community and a risk of flight.  Accordingly, the defendant bears the initial burden of showing that he is not a danger to the community or a flight risk.  For the reasons set forth below, the defendant cannot sustain that burden.

III.   Quintero Arellanes Is a Danger to the Community

The facts and circumstances of this case compel the defendant's detention, as the relevant Bail Reform Act factors show that he poses a danger to the community.

The counts with which the defendant is charged—participating in an international narcotics importation and distribution conspiracy and carrying firearms in furtherance of that conspiracy—are extremely serious and each carry a 10-year mandatory minimum prison sentence.  See 21 U.S.C. §§ 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G) and 960(b)(1)(H); 18 U.S.C. § 924(c).  As Rafael Caro Quintero's personal head of security, the defendant regularly carried firearms to protect Caro Quintero and his drug trafficking activities.  The nature of this criminal conduct demonstrates that the defendant is a threat and danger to the people of the United States who suffer from the flow of illicit drugs into their communities.

IV.     <u>Quintero Arellanes Poses a Significant Risk of Flight</u>

        Similarly, the defendant cannot overcome the presumption that he is a risk of flight, for several reasons.

        First, if convicted of any of Counts Two through Four, he faces a mandatory minimum sentence of 10 years' imprisonment.  All of the counts carry a statutory maximum of life imprisonment.  Given the significant jail time that the defendant faces upon conviction, he has a strong incentive to flee the jurisdiction.  <u>See</u> <u>Jackson</u>, 823 F.2d at 7 (prospect of severe sentence creates incentive to flee); <u>Martir</u>, 782 F.2d at 1147 (charges with significant maximum terms created potent incentive to flee); <u>Cisneros</u>, 328 F.3d at 618 (seriousness of charges gave defendant strong incentive to abscond).

        Second, the defendant's criminal conduct demonstrates prior familiarity with flight from prosecution.  One of the defendant's primary responsibilities in the DTO was to ensure that the DTO's leader evaded law enforcement capture in Mexico, and the defendant carried out those responsibilities successfully for years.

        Third, the defendant's personal history and characteristics demonstrate that he is a significant flight risk.  The defendant has no known personal ties to the United States and has been brought to the United States for the sole purpose of facing criminal prosecution.  He has no legal status in this country.  Given his absence of any connection to the United States (aside from his drug trafficking activities) and his extensive ties to Mexico, the defendant constitutes a significant risk of flight.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order

the defendant to be detained permanently pending trial, as there is no condition or combination of

conditions that could reasonably assure the safety of the community or the defendant's appearance

at trial.

Dated:          Brooklyn, New York
                March 1, 2023


                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                              By:       ____/s/_____
                                        Saritha Komatireddy
                                        Francisco J. Navarro
                                        Erin M. Reid
                                        Andrew D. Wang
                                        Assistant U.S. Attorneys
                                        (718) 254-7000