RMP:FJN/ADW/CWE/MG/KPO
F.#2015R00471

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

RAFAEL CARO QUINTERO,
        also known as "RCQ," "Cesar,"
        "Don Rafa," "Rafa," "El Senor," "28,"
        "R1," "Compa," "El Hombre," "El
        Pleve," "El Canoses," "El Crespo," and
        "the Old Man,"

and

ISMAEL QUINTERO ARELLANES
        also known as "Fierro,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 15-CR-208 (S-3) (FB)


THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRETRIAL CONFERENCE
PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT


                         JOSEPH NOCELLA, JR.
                         United States Attorney
                         Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201

Francisco J. Navarro
Andrew D. Wang
Chand Edwards-Balfour
Miranda Gonzalez
Katherin P. Onyshko
Assistant United States Attorneys
(Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The defendant Rafael Caro Quintero is charged in a four-count indictment with:
(1) leading a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a)-(c); (2) participating in an international marijuana distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(1)(G), and 959(d); (3) participating in an international heroin, methamphetamine, and cocaine distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(B)(1)(H), and 959(d); and (4) using firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii). *See* ECF No. 57. The defendant Ismael Quintero Arellanes is charged in the same indictment with: (1) participating in an international marijuana distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(1)(G), and 959(d); (2) participating in an international heroin, methamphetamine, and cocaine distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(B)(1)(H), and 959(d); and (3) using firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii).

The government has determined that this case may implicate classified information. Accordingly, the government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), to matters relating to classified information that may arise in connection with this case, both before and during trial.

The government also respectfully requests that the Court hold a pretrial conference, pursuant to Section 2 of CIPA, to consider such matters. The next status conference in this matter is scheduled for June 17, 2026. The government respectfully requests that, in addition to the status

conference, the Court hold a CIPA Section 2 conference at that time.  At that conference, the government will propose a schedule for the filing of the government's anticipated motion pursuant to CIPA Section 4.

BACKGROUND ON CIPA

When a case may implicate classified information, it is the government's practice to provide the Court with a detailed description of the procedures mandated by CIPA for protecting such classified information.

## I.      THE CLASSIFIED INFORMATION PROCEDURES ACT

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'"  *United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) (quoting *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008)); *see also In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information.").  CIPA defines "[c]lassified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. 3, § 1(a).

## II.     PRETRIAL CONFERENCES, PROTECTIVE ORDERS, AND DISCOVERY

### A.      Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified

3

information that may arise in connection with the prosecution." 18 U.S.C. app. 3, § 2. After such

a motion is filed, Section 2 states that the district court "shall promptly hold a pretrial conference

to establish the timing of requests for discovery, the provision of notice required by Section 5 of

[CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.*

        B.      Protective Orders

        Section 3 of CIPA requires the Court, upon the request of the United States, to issue

an order "to protect against the disclosure of any classified information disclosed by the United

States to any defendant in any criminal case. . . ." 18 U.S.C. app. 3, § 3. The key Senate Report

on CIPA, issued by the Senate Committee on the Judiciary, provides that the terms of a protective

order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4299 (1980).

        C.      Discovery of Classified Information by the Defendant

        Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient

showing, may authorize the United States to delete specified items of classified information from

documents to be made available to the defendant through discovery under the Federal Rules of

Criminal Procedure, to substitute a summary of the information for such classified documents, or

to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. app. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an *in camera*, *ex parte* submission to the Court, and the Second Circuit has repeatedly affirmed district court decisions entering protective orders based on such submissions. *See Farekh*, 956 F.3d at 107 (noting that both CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) "'authorize *ex parte* proceedings' and that a 'district court acts well within its discretion in reviewing [CIPA] submissions *ex parte* and *in camera*'") (internal citations omitted); *Abu-Jihaad*, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct *ex parte* hearings manifests no abuse of discretion"); *Aref*, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)).

District courts within the Second Circuit have universally and uniformly upheld the use of *ex parte* filings and *in camera* proceedings on CIPA Section 4 motions. *See, e.g., United States v. Manuchekhri*, No. 25-CR-88, ECF No. 57 (E.D.N.Y. April 13, 2026) (Gonzalez, J.); *United States v. Sun, et al.*, No. 24-CR-346, ECF No. 180 (E.D.N.Y. Sept. 25, 2025) (Cogan, J.); *United States v. Ahemeid*, No. 20-CR-502, ECF No. 80 (E.D.N.Y. Oct. 7, 2024) (Cogan, J.); *United States v. Chudhary*, No. 20-CR-135, ECF No. 181 (E.D.N.Y. July 23, 2024) (Amon, J.); *United States v. Grinin*, No. 22-CR-409, ECF No. 109 (E.D.N.Y. April 11, 2024) (Gonzalez, J.).; *United States v. Wang*, No. 22-CR-230, ECF No. 35 (E.D.N.Y. Aug. 25, 2023) (Brodie, J.); *United States*

5

*v. Kandic*, No. 17-CR-449, ECF No. 41 (E.D.N.Y. Jan. 17, 2019) (Garaufis, J.); *United States v. Guzman Loera*, No. 09-CR-466, ECF Nos. 228 and 681 (E.D.N.Y. May 15 and Nov. 5, 2018) (Cogan, J.); *United States v. Shahnaz*, No. 17-CR-690, ECF No. 24 (E.D.N.Y. Aug. 8, 2018) (Seybert, J.); *United States v. Zhong*, No. 16-CR-614, ECF No. 70 (E.D.N.Y. Sept. 6, 2017) (Irizarry, J.); *United States v. Lin*, No. 15-CR-601, ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (Irizarry, J.); *United States v. Isa*, No. 11-CR-819, ECF No. 65 (E.D.N.Y. Sept. 19, 2016) (Mauskopf, J.); *United States v. Al Farekh*, No. 15-CR-268, ECF No. 59 (E.D.N.Y. Aug. 23, 2016) (Cogan, J.); *United States v. Velentzas*, No. 15-CR-213, ECF No. 54 (E.D.N.Y. Aug. 10, 2016) (Johnson, J.); *United States v. Harun A Hausa*, No. 12-CR-134, ECF No. 90 (E.D.N.Y. Mar. 26, 2016) (Cogan, J.); *United States v. Medunjanin*, No. 10-CR-019, ECF No. 172 (E.D.N.Y. Feb. 22, 2012) (Dearie, J.); *see also United States v. Saipov*, No. 17-CR-722, 2019 WL 5558214, at *7 (S.D.N.Y. Oct. 29, 2019) (Broderick, J.); *United States v. Schulte*, No. 17-CR-548, 2019 WL 3764662, at *7 (S.D.N.Y. July 22, 2019) (Crotty, J.); *United States v. Chi Ping Ho*, No. 17-CR-779, 2018 WL 6082514, at *4 (S.D.N.Y. Nov. 21, 2018) (Preska, J.); *United States v. Ng Lap Seng*, No. 15-CR-706, 2017 WL 2715213, at *2 (S.D.N.Y. June 22, 2017) (Broderick, J.); *United States v. Mostafa*, No. 04-CR-356, ECF No. 233 (S.D.N.Y. Jan. 17, 2014) (Forrest, J.); *United States v. al Fawwaz, et al.*, No. 98-CR-1023, ECF No. 1317 (S.D.N.Y. Sep. 24, 2013) (Kaplan, J.); *United States v. El-Hanafi et al.*, No. 10-CR-162, ECF No. 94 (S.D.N.Y. Feb. 24, 2012) (Wood, J.).

"CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" *Velentzas*, 2016 WL 4250304, at *2 (quoting *United States v. Zazi*, No. 10-CR-60 (JG), 2011 WL 2532903, at *1 (E.D.N.Y. Jun. 24, 2011)); *see also Aref*, 533 F.3d at 78.   Indeed, CIPA's legislative

6

history makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted, or deferred.  *See* S. Rep. No. 96-823, at 6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); *see also Abu-Jihaad*, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security") (quoting *United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009)); *Aref*, 533 F.3d at 78 (same).

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one."  *Stewart*, 590 F.3d at 130.  "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'"  *Abu-Jihaad*, 630 F.3d at 140-41 (internal citations omitted, quoting *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991)).  "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable.  Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense."  *United States v. Boulos*, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

The application of the government's privilege against disclosure of classified information is a multi-step process.  "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies."  *Stewart*, 590 F.3d

at 131.   If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *Abu-Jihaad*, 630 F.3d at 141 (quoting *Aref*, 533 F.3d at 80).   "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense."   *Aref*, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's rights to present his defense.   For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense."   *Al Farekh*, 2016 WL 4444778, at *2-3; *see also United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'").   The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified information in discovery.   Indeed, as the Second Circuit has recognized, "[n]othing in the text of § 4 limits the District Court's authority to review classified information *ex parte* only where defense counsel lacks a security clearance."   *Al-Farekh*, 956 at 107; *see also United States v. Babafemi*, No. 13 CR 109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) ("A person may have access to classified information provided that . . . the person has a need-to-know the information."); *Zazi*, 2011 WL 2532903, at *3 (same);

*United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

III.    NOTICE OF DEFENDANT'S INTENT TO DISCLOSE AND PRETRIAL EVIDENTIARY RULINGS

There are three critical pretrial steps in the handling of classified information under CIPA after such information has been provided to the defendant through discovery.  First, the defendant must, pursuant to CIPA Section 5(a), specify in detail the precise classified information he reasonably expects to disclose at trial.   Second, the Court, upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the use, relevance, and admissibility of the proposed evidence.   Third, following the Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

A.    The Requirement to Provide Notice of Disclosure

Section 5(a) requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of that intention to the Court and the government.   Section 5(a) expressly requires that such notice "include a brief description of the classified information," and case law under Section 5(a) holds that such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense."   *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); *see also United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) (*en banc*).   This requirement applies to both documentary exhibits and witness testimony, whether that testimony is anticipated to be elicited on direct or cross-examination.   *See United States v.*

9

*Hitselberger*, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting *United States v. Poindexter*, 725 F. Supp. 13, 33 (D.D.C. 1989)).

If the defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information." 18 U.S.C. app. 3, § 5(b); *see also United States v. Badia*, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA § 5). Similarly, if the defendant attempts to disclose at trial classified information that is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA. *See United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a trial or pretrial proceeding' until the required notice has been given."); *Smith*, 780 F.2d at 1105 ("defendant is forbidden from disclosing any such information absent the giving of notice"); *see generally United States v. North*, 708 F. Supp. 399 (D.D.C. 1988).

B.      The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. app. 3, § 6(a). The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use,

10

relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding."   *Id.* (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under Section 6(a), the United States must notify the defendant of the hearing and identify the classified information which will be at issue.   If the information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant.   Thus, as Congress recognized in enacting CIPA, "the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval."   S. Rep. No. 96-823, at 6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffers and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under Rule 401 of the Federal Rules of Evidence.[1]   *Smith*, 780 F.2d at 1106; *see generally Yunis*, 867 F.2d at 622.   The Court's inquiry does not end there, however, because under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial."   *Smith,* 780 F.2d at 1106.   The Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," such that it should be excluded under Rule 403 of the Federal Rules of Evidence.

---

[1]     CIPA does not change the "generally applicable evidentiary rules of admissibility." *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984); *accord Babafemi*, 2014 WL 1515277, at *1. Rather, CIPA alters the *timing* of rulings concerning admissibility, so as to require them to be made before trial.   *United States v. Poindexter*, 698 F. Supp. 316, 318 (D.D.C. 1988); *accord Zazi*, 2011 WL 2532903, at *1; *Smith*, 780 F.2d at 1106.

*United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984).   At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

> C.      Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA.   18 U.S.C. app. 3, § 6(c).   The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable.   *See In re Terrorist Bombings*, 552 F.3d at 116.   The Court must grant the motion for substitution "if it finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."   *Id.*

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure.   18 U.S.C. app. 3, § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information."   *Id.*   Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case.   *Id.* at § 6(e).

12

## IV.    OTHER RELEVANT CIPA PROCEDURES

### A.    Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information."   18 U.S.C. app. 3, § 7(a).   The term "disclosure" relates both to information that the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant that he or she intends to make public.   Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under Section 7(a).   *Id.* § 7(b).

### B.    Rules Governing Introduction of Classified Information

To prevent "unnecessary disclosure" of classified information, Section 8(b) permits the Court to order admission into evidence only a part of a writing, recording, or photograph. Alternatively, the Court may order into evidence the entire writing, recording, or photograph with all or part of the classified information contained therein excised.   Excision of such classified information may not be authorized, however, if fairness requires that the whole document, recording, or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not previously found to be admissible.   If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that the defendant give the United States

13

immediate notice under Section 5 of the Act; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony.   Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

C.    Security Procedures

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts. Such procedures were originally promulgated in 1981 and have been in place, with revisions, ever since.  *See* "Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information" (reprinted following 18 U.S.C. app. 3, § 9).

THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE

In the instant case, classified material may exist that could be subject to disclosure in advance of trial under applicable rules, statutes, and case law.   The disclosure of such material would raise issues of national security that need to be addressed under CIPA.   Accordingly, the government has requested a pretrial conference pursuant to Section 2 of CIPA to take place at the Court's previously scheduled June 17, 2026 conference, and, at that conference, for the Court to set a schedule for the government to file any motion pursuant to CIPA Section 4.

The government has endeavored to identify the universe of potentially discoverable classified material and determine its potential applicability, nature, and volume.   At present, the government is undergoing its review of any potentially discoverable classified information.   Based

14

on that estimate, the government will request a schedule for the filing of motions, pursuant to Sections 3 and 4 of CIPA, if necessary, relating to the deletion, substitution, or disclosure pursuant to a protective order of classified information otherwise subject to discovery under the Federal Rules of Criminal Procedure and applicable law.   18 U.S.C. app. 3, § 4.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference.   Accordingly, should the government identify potentially discoverable classified information, pursuant to Section 4 of CIPA, the government will make an *in camera*, *ex parte* submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a protective order, for reasons the government will further set forth in that submission.   *See id.*; *see also supra* (courts in this Circuit have consistently held that *in camera*, *ex parte* submissions to a district court in matters involving national security are proper, particularly when such submissions involve classified information).

CONCLUSION

For the foregoing reasons, the government respectfully requests the Court hold a

pretrial conference pursuant to Section 2 of CIPA on June 17, 2026, at which the Court may set a

schedule for the government to file any motion pursuant to Section 4 of CIPA.

Dated:          Brooklyn, New York
                June 16, 2026

                                                    JOSEPH NOCELLA, JR.
                                                    United States Attorney
                                                    Eastern District of New York

                                      By:    /s/ Francisco J. Navarro
                                             Francisco J. Navarro
                                             Andrew D. Wang
                                             Chand Edwards-Balfour
                                             Miranda Gonzalez
                                             Katherine P. Onyshko
                                             Assistant United States Attorneys
                                             (718) 254-7000

16